# STATE OF MICHIGAN

# COURT OF APPEALS

In re McCARRICK/LAMOREAUX, Minors.

FOR PUBLICATION
October 23, 2014
9:25 a.m.

No. 315510
Chippewa Circuit Court
Family Division
LC No. 13-014227-NA

In re J. McCARRICK, Minor.

Nos. 317403 & 318475
Chippewa Circuit Court
Family Division
LC No. 2013-014227-NA

Before: SHAPIRO, P.J., and WHITBECK and STEPHENS, JJ.

PER CURIAM.

This consolidated child welfare dispute involves three dockets. In Docket No. 315510, respondent-mother, M. McCarrick, appeals of right the trial court's March 13, 2013 order removing her three minor children from her home. In Docket No. 317403, McCarrick appeals of right the trial court's June 28, 2013 order removing her minor daughter from her father's care and custody. The child's father is not participating in these appeals. In Docket No. 318475, McCarrick appeals by delayed leave granted[1] the trial court's orders removing the children from her care.

Because the trial court failed to comply with the Indian Child Welfare Act (ICWA)[2] and the Michigan Indian Family Preservation Act (the Family Preservation Act),[3] we conditionally reverse and remand for further proceedings.

---

[1] *In re J McCarrick Minor*, unpublished order per curiam of the Court of Appeals, entered March 28, 2014 (Docket No. 318475).

[2] 25 USC 1901 *et seq.*

-1-

# I. FACTS

## A. BACKGROUND FACTS

The children in this case are of Indian heritage and are enrolled members of the Sault Ste. Marie Tribe of Chippewa Indians. On February 26, 2012, the Department of Human Service (the Department) petitioned the trial court to remove the children from McCarrick's care. The Department contended that since 2005, McCarrick has been involved in four abuse or neglect proceedings in which she had physically abused, neglected, improperly supervised, and contribute to the delinquency of her children. The Department alleged that McCarrick and the children were abusing alcohol, marijuana, cocaine, and heroin in McCarrick's home. The Department detailed the services that it had previously provided to McCarrick.

On February 26, 2013, the trial court issued an interim ex parte order authorizing the Department to remove the children from the home pending a preliminary hearing. The trial court found that leaving the children in the home would be contrary to their welfare. It also found that the Department made active efforts to prevent the breakup of McCarrick's family, as ICWA and the Indian Family Preservation Act require it to do before the trial court may authorize the children's removal. On February 27, 2013, the trial court adjourned the preliminary hearing to allow the parties to secure counsel and to allow a tribal representative to appear at the removal hearing.

At the March 8, 2013 removal hearing, Jennifer Sheppard, a services specialist for the Department, testified that McCarrick provided the children with inadequate parental supervision because she allowed them to abuse drugs. According to Sheppard, the Department received a complaint that McCarrick allowed her older daughter to smoke marijuana in a car that McCarrick was driving and that the daughter tested positive for marijuana. Sheppard testified that McCarrick's son also smoked marijuana in the home and was on probation for marijuana use. She also stated that McCarrick's son indicated that McCarrick's older daughter was "shooting up." The children told Sheppard that McCarrick was unaware of or ignored their substance abuse in the home.

Sheppard testified that the son disclosed that McCarrick's friend, J. Vincent, also used drugs in the home and that he had observed Vincent's toddler holding a syringe. Sheppard believed that McCarrick's younger daughter was obtaining drugs from Vincent. According to Sheppard, the Department had investigated McCarrick ten times in the past four years and had substantiated neglect allegations in 2010. McCarrick tested negative for drugs and Sheppard did not believe that McCarrick was supplying the children with drugs. Gary McLeod, the older children's probation officer, testified that the children were on probation for retail fraud, illegal entry, truancy, and violating probation. McLeod testified that McCarrick cooperated with the children's probation.

## B. CHILD REARING PRACTICES WITHIN THE TRIBE

---

[3] MCL 712B.1 *et seq.*

The parties stipulated that Stacey O'Neil was an expert on child rearing practices within the tribe. O'Neil testified that she works for the Sault Tribe and she provided McCarrick with in-home care services from September to December 2011. O'Neil detailed the services that she provided to McCarrick, including: (1) behavioral health and psychological assessments; (2) random drug screens; (3) assistance with obtaining a PPO against her previous partner; (4) financial assistance to obtain housing; (5) services to pay for her utilities; (6) gas vouchers for work transportation; (7) ongoing services through the Department; and (8) parenting services. O'Neil opined that these services qualified as active efforts to prevent the breakup of McCarrick's family. O'Neil testified that she successfully closed McCarrick's case in December 2011 and that she had no further contact with McCarrick.

## C. THE TRIAL COURT'S FINDINGS AND CONCLUSIONS

On March 8, 2013, the trial court found that probable cause existed to assume jurisdiction over the children. The trial court found that the Department proved by clear and convincing evidence that it made active efforts to prevent the breakup of McCarrick's family, and that continued placement with McCarrick would subject the children to serious emotional or physical damage. The trial court found that O'Neil provided McCarrick with active efforts in December 2011, and that the efforts were not successful because McCarrick actively or passively permitted the children to use drugs.

The trial court found that McCarrick's continued custody of the children was likely to result in serious emotional or physical damage to the children, and that it was dangerous to the children to remain in her care. It placed the children with the Department for care and supervision.

## D. THE SUPPLEMENTAL PETITIONS AND SECOND REMOVAL HEARING

On May 2, 2013, the Department filed a supplemental petition against McCarrick. According to the Department, McCarrick maintained contact with the older daughter despite the trial court's order restricting their contact to supervised visitation. According to the Department, the younger daughter told McCarrick that she was suicidal and wanted to run away from her placement, but McCarrick did not report this to anyone. The Department alleged that the younger daughter later ran away and attempted suicide. The Department also alleged that in April 2013, Children's Protective Services workers found McCarrick's home in a "deplorable" condition and McCarrick acknowledged that drug users were living in her home.

On June 7, 2013, the Department petitioned to remove the older daughter from her father's care. The Department asserted that the child's father was incarcerated for assault and was unable to care for the child. On June 26, 2013, the trial court held a hearing on whether to remove the older daughter from her father's care. O'Neil testified about the services that she provided to the father. The trial court noted that the child was removed from McCarrick's care by a previous court order, and found that its previous determinations regarding active efforts and the potential harm to the children supported continuing their removal.

## E. PROCEDURAL HISTORY

As previously discussed, McCarrick filed her initial appeals in Dockets 315510 and 317403 as of right. This Court dismissed both appeals, reasoning that non-dispositional removal orders are not appealable to this Court as of right.[4] McCarrick appealed this Court's dismissal to the Michigan Supreme Court.

In Docket No. 318475, McCarrick applied in this Court for delayed leave to appeal the trial court's removal orders. On March 28, 2014, in Docket No. 318475, this Court granted McCarrick's application for leave to appeal.

On April 11, 2014, the Michigan Supreme Court reversed this Court's order in Docket No. 315510 and directed us to reconsider our dismissal in light of unpublished decision from this Court:

> [W]e VACATE the February 18, 2014 judgment of the Court of Appeals, and we REMAND this case to the Court of Appeals for its reconsideration of the respondent's jurisdictional issue, in light of *In re White*, unpublished opinion per curiam of the Court of Appeals, issued December 19, 2013 (Docket No. 313770); *In re McClain/Waters/Skinner*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2011 (Docket No. 302460); and *In re Klemkow*, unpublished opinion per curiam of the Court of Appeals, issued September 16, 2010 (Docket No. 295488).[5]

The Michigan Supreme Court also vacated and remanded Docket No. 317403 on the same issue.

McCarrick's jurisdictional issue is

> MCR 3.993(A)(1) permits an appeal by right to the court of appeals of "an order of disposition placing a minor under the supervision of the court of removing the minor from the home." This Court previously dismissed Ms. McCarrick's appeals by right to of removal orders issued after preliminary hearings because the appealed orders were not orders of disposition issued under MCR 3.973. Yet in other recent cases, this Court has decided such cases on the merits. Does MCR 3.993(A)(1) afford appeals by right of removal orders issued after preliminary hearings?

---

[4] *In re McCarrick/Lamoreaux Minors*, unpublished opinion per curiam of the Court of Appeals, issued February 18, 2014 (Docket No. 315510); *In re J McCarrick Minor*, unpublished order per curiam of the Court of Appeals, entered September 16, 2013 (Docket No. 317403).

[5] *In re McCarrick/Lamoreaux Minors / In re J McCarrick Minor*, 495 Mich 986 (2014).

## II. INTERPRETATION OF MCR 3.993(A)(1)

### A. OVERVIEW

MCR 7.203(A)(2) provides that this Court may hear appeals of right from "[a] judgment or order of a court or tribunal from which an appeal of right to the Court of Appeals has been established by law or court rule." MCR 3.993(A)(1) provides that a party may appeal by right "an order of disposition placing a minor under the supervision of the court or removing the minor from the home[.]"

To answer the question presented on appeal, this Court must decide the meaning of the phrase "an order of disposition placing a minor under the supervision of the court or removing the minor from the home[.]" McCarrick contends that that this phrase means that a respondent parent may appeal *as of right* "an order . . . removing the minor from the home." In other words, McCarrick contends that the clause "of disposition" modifies the clause "placing a minor under the supervision of the court" rather than the previous clause "an order." Therefore, under McCarrick's reading, a parent could appeal by right *either* (1) *an order of disposition* that places a minor under the supervision of the court, or (2) *an order* removing the minor from the home.

For the reasons below, we disagree. We conclude that MCR 3.993(A)(1) provides that a respondent parent may appeal (1) an order of disposition that places a minor under the supervision of the court, or (2) an order of disposition that removes the minor from the home. Thus, we conclude that the order involved must be an *order of disposition*. Accordingly, we conclude that McCarrick is not entitled to an appeal of right in Dockets No. 315510 and 317403 because neither order was an order of disposition.

### B. STANDARD OF REVIEW

This Court reviews de novo the scope of this Court's jurisdiction.[6] This Court reviews de novo questions of law, including the interpretation and application of our Court Rules.[7]

### C. RULES OF INTERPRETATION

This Court interprets court rules using the "same principles that govern the interpretation of statutes."[8] Our purpose when interpreting court rules is to give effect to intent of the Michigan Supreme Court.[9] The language of the court rule itself is the best indicator of intent.[10]

---

[6] *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

[7] *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

[8] *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

[9] *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 528-529; 672 NW2d 181 (2003).

[10] See *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009).

If the plain and ordinary meaning of a court rule's language is clear, judicial construction is not necessary.[11]

When interpreting a court rule, we must read the rule's provisions "reasonably and in context."[12] We should not read court rules in isolation.[13] Generally, this Court affords every word and phrase in a court rule its plain and ordinary meaning.[14] But when the Michigan Supreme Court chooses a word that has acquired "a peculiar and appropriate meaning in the law," we must construe that term according to its legal meaning.[15] We construe identical language in various provisions of the same act identically.[16] And we read different acts that share the same subject or share a common purpose together as one law.[17]

When interpreting a court rule, we must presume that every word has some meaning.[18] Therefore, we must avoid any interpretation that renders any part of the court rule surplusage or nugatory.[19] This Court must give effect to every sentence, phrase, clause, and word in a court rule.[20] If at all possible, this Court should interpret a court rule to avoid inconsistencies.[21]

## D. BACKGROUND LAW

### 1. CHILD PROTECTIVE PROCEEDINGS

Child protection law is procedurally complex. The family division of the circuit court has jurisdiction over minors whose parents or persons responsible for their care neglect or fail to support them or whose homes are unfit places to live.[22] A child protective proceeding typically commences with the child's emergency removal from the home, or a petition filed with the family division of the circuit court to remove the child from the home.[23] When the child is

---

[11] See *People v Breidenbach*, 489 Mich 1, 8; 798 NW2d 738 (2011).

[12] See *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).

[13] See *id.* at 740.

[14] See *United States Fidelity & Guaranty Co*, 484 Mich at 13.

[15] See *Feyz v Mercy Mem Hosp*, 475 Mich 663, 673; 719 NW2d 1 (2006).

[16] See *Robinson v City of Lansing*, 486 Mich 1, 17; 782 NW2d 171 (2010).

[17] See *Sinicropi v Mazurek*, 273 Mich App at 149, 156; 729 NW2d 256 (2006).

[18] See *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

[19] See *id.*

[20] See *US Fidelity Ins & Guaranty Co*, 484 Mich at 13.

[21] See *Nowell v Titan Ins Co*, 466 Mich 478, 483; 648 NW2d 157 (2002).

[22] MCL 712A.2(b).

[23] MCR 3.963.

removed from the home on an emergency basis, the Department must contact a judge or referee "immediately" to seek an ex parte placement order.[24] Generally, if the child is taken into protective custody, the trial court must hold a hearing within 24 hours.[25] But the trial court may adjourn the hearing for the purpose of securing an attorney, parent, or legal guardian, for up to 14 days to obtain a witness,[26] or for up to 21 days to provide notice to the child's tribe if the child is an Indian child.[27]

## 2. INDIAN CHILDREN

If the child is an Indian child, MCR 3.967 provides that a removal hearing must be held within 14 days of the child's removal from the home unless the child's parent or Indian custodian has requested an additional 20 days.[28] The trial court may remove an Indian child from the child's parent or Indian custodian, or the child may remain removed,

> only upon clear and convincing evidence, including the testimony of at least one qualified expert witness . . . who has knowledge about the child-rearing practices of the Indian child's tribe, that active efforts as defined in MCR 3.002 have been made to provide remedial and rehabilitative programs designed to prevent the breakup of the Indian family, that these efforts have proved unsuccessful, and that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.[29]

## 3. PRELIMINARY HEARINGS

The trial court may combine the removal hearing with the preliminary hearing.[30] At the preliminary hearing, "the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial."[31] If the trial court authorizes the petition at the preliminary hearing, the trial court may release the child to a parent, guardian, or legal custodian, or "may order placement of the child . . . ."[32]

---

[24] MCR 3.963(A)(3).

[25] MCR 3.965(A)(1); MCL 712A.13a(2).

[26] MCR 3.965(B)(1), (10).

[27] MCR 3.965(B)(11).

[28] MCR 3.967(A).

[29] MCR 3.967(D).

[30] See MCR 3.967(E).

[31] MCR 3.695(A)(11).

[32] MCR 3.965(A)(12).

The trial court may order placement of the child into foster care if the court finds all of the following:

> (a) Custody of the child with the parents presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.[33]

If the trial court orders placement of the child in foster care, it must make (1) an explicit finding that placement in the child's home is contrary to the child's welfare and (2) the reasonable efforts findings outlined above.[34]

### 4. DISPOSITIONAL HEARINGS

After the preliminary hearing, the case progresses either by the parent's plea of admission or no contest to the allegations in the petition[35] or by a trial on the allegations in the petition.[36] Following a plea or trial, the trial court conducts a dispositional hearing to determine what actions to take with respect to the child or any adult.[37] "When the child is in placement, the interval [to the dispositional hearing] may not be more than 28 days, except for good cause."[38] The trial court must find whether the Department made reasonable efforts to prevent the child's removal or return the child to the home.[39] Following the hearing, "[t]he court shall enter an order of disposition . . . ."[40]

---

[33] MCR 3.965(C)(2). Also see MCL 712A.13a(9).

[34] MCR 3.965(C)(3) and (4).

[35] MCR 3.971.

[36] MCR 3.972.

[37] MCR 3.973(A).

[38] MCR 3.973(C).

[39] MCR 3.973(F).

[40] MCR 3.973(F)(1).

If the trial court does not terminate its jurisdiction over the child at the dispositional hearing, the trial court must "follow the review procedures of MCR 3.975 for a child in placement[.]"[41] MCR 3.975 provides dispositional review procedures that the trial court must follow if a child is in foster care. Under MCR 3.975(F)(1), the trial court must evaluate the case service plan and the parent's progress with services. The trial court must also consider "any likely harm to the child if the child continues to be separated from his or her parent, guardian or custodian," "any likely harm to the child if the child is returned to the parent, guardian, or legal custodian," and "if the child is an Indian child, whether the child's placement remains appropriate . . . ."[42] Following dispositional review, the trial court may return the child home, change the child's placement, modify the case service plan, or modify, continue, or replace the dispositional order.[43]

## E. UNPUBLISHED OPINIONS

### 1. *IN RE KLEMKOW*[44]

The Michigan Supreme Court has instructed this Court to consider McCarrick's jurisdictional issue in light of three unpublished opinions of this Court. In the first opinion, *Klemkow*, the respondent-mother appealed as of right the trial court's order terminating her parental rights to her minor children.[45] The mother attempted to challenge the Departments' alleged failure to comply with its obligation to notify the court of what efforts it made to prevent the child's removal.[46] The *Klemkow* Court concluded that the issue was not properly before the Court because it was an improper collateral attack:

> Respondent could have directly appealed the September 2007 order removing the child. MCR 3.993(A)(1). She did not do so and cannot now collaterally challenge that decision in this appeal from the October 2009 termination order.[47]

The remainder of the *Klemkow* court's decision did not concern the Court's jurisdiction under MCR 3.993.

---

[41] MCR 3.973(G).

[42] MCR 3.973(F)(1)(e), (f), and (g).

[43] MCR 3.973(G).

[44] *In re Klemkow*, unpublished opinion per curiam of the Court of Appeals, issued September 16, 2010 (Docket No. 295488).

[45] *Id*., slip op at 1.

[46] *Id*.

[47] *Id*.

## 2. *IN RE MCCLAIN/WATERS/SKINNER*[48]

In the second opinion, *McClain/Waters/Skinner*, a panel of this Court considered two consolidated appeals, one in which the respondent "appeal[ed] as of right . . . the trial court's January 25, 2011[] order denying her objections to the court's preliminary hearing decision . . . continuing the children's placement outside the respondent's home pending a trial on the petition[,]" and one in which the respondent "appeal[ed] as of right from the trial court's February 24, 2011, initial dispositional order in which the court determined that it had jurisdiction over the children . . . ."[49] The *McClain/Waters/Skinner* Court did not address the respondent-mother's arguments regarding the trial court's probable cause finding at the preliminary hearing because it determined that the trial court subsequently acquired jurisdiction over the children, rendering the probable cause issue moot.[50]

However, the Court did consider the trial court's order removing the children from the home at the preliminary hearing. The trial court reasoned that

> [t]he trial court's exercise of jurisdiction over the children pursuant to the fathers' pleas did not render the removal decision moot. Indeed, it was the removal of the children from the home that enabled respondent to file an appeal as of right in Docket No. 302460. See MCR 3.993(A).[51]

The *McClain/Waters/Skinner* Court did not otherwise consider MCR 3.993(A).

## 3. *IN RE WHITE*[52]

In the third opinion, *White*, a panel of this Court considered two consolidated appeals, one in which the respondent "appeal[ed] as of right the trial court's removal order and the preliminary order authorizing a petition for temporary jurisdiction over the minor child[,]" and the other in which the respondent "directly appeal[ed] as of right the trial court's initial dispositional order in which the court determined that it had jurisdiction over the child."[53] The *White* Court determined that the trial court applied the correct legal standard and satisfied the statutory requirements when it removed the minor child from the respondent-mother's care.[54]

---

[48] *In re McClain/Waters/Skinner*, unpublished opinion per curial of the Court of Appeals, issued December 20, 2011 (Docket No. 302460).

[49] *Id*., slip op p 1.

[50] *Id*. at 2.

[51] *Id*.

[52] *In re White*, unpublished opinion per curiam of the Court of Appeals, issued December 19, 2013 (Docket No. 313770).

[53] *Id*., slip op at 1.

[54] *Id*. at 3.

The *White* Court appears to have assumed that this Court had jurisdiction to hear an appeal from an order removing the child as an appeal of right. There is no indication that either party raised the issue, and the *White* Court at no point in its analysis considered its jurisdiction under MCR 3.993.

### 4. CONCLUSION REGARDING UNPUBLISHED OPINIONS

We conclude that the three unpublished opinions are neither helpful nor instructive in determining the meaning of MCR 3.993(A)(1). In each of these opinions, prior panels of this Court have assumed—without deciding—that this Court has jurisdiction to hear an appeal from an order removing a child from the home as an appeal of right. There is no indication in any of these cases that the parties raised or that this Court considered sua sponte the issue of the extent of this Court's jurisdiction under MCR 3.993(A)(1).

Further, each of these appeals concerned, or was consolidated with, an order from which a respondent parent unquestionably had an appeal of right: in *Klemkow*, the order terminating parental rights,[55] and in *McClain/Waters/Skinner* and *White*, the first dispositional order after the trial court removed the child from the home.[56] Accordingly, even if this Court did not have jurisdiction to hear the parents' appeals of the initial order removing the children from their home as of right, the Court certainly had the authority to hear and address the parties' issues with the prior removal proceedings in the first appeal as of right. We are unable to find a case in which this Court considered an appeal from the order removing the children *alone*, on its own merits, as compared to those circumstances in which the respondent parent also had an appeal of right.

### F. INTERPRETING MCR 3.993(A)(1)

### 1. OVERVIEW

MCR 3.993(A)(1) allows an appeal of right of "an order of disposition placing a minor under the supervision of the court or removing the minor from the home[.]" This phrase has several constituent clauses. On the basis of the interaction of these clauses, McCarrick contends that MCR 3.993(A)(1) allows a respondent parent to appeal as of right "an order . . . removing the minor from the home." McCarrick asserts that the clause "of disposition" must modify the clause "placing a minor under the supervision of the court" rather than the clause "an order." McCarrick asserts that any other interpretation will render the phrase "placing a minor under the supervision of the court" surplusage because the trial court *never* places a minor under the court's supervision without also removing the child from the home.

---

[55] MCR 3.993(A)(2).

[56] *In re SLH*, 277 Mich App 662, 668-669; 747 NW2d 547 (2008); *In re Gazella*, 264 Mich App 668, 680; 692 NW2d 708 (2005) (the initial dispositional order contains a finding that the adjudication was held, that the children come within the jurisdiction in the court, and places the children out of the home).

## 2. ORDER OF DISPOSITION

In order to resolve this question, we must consider the meaning and interaction of each clause in MCR 3.993(A)(1). One of the primary questions on appeal is whether the first clause is simply "an order" or "an order of disposition." We conclude that the more natural reading of the first clause of MCR 3.993(A)(1) is that the order appealed must be an "order of disposition."

First, our reading is consistent with the grammar of the clause. Generally, an order is "[a] command, direction or instruction[,]" or [a] written direction or command delivered by a court or judge."[57] The word "of" typically indicates possession or association.[58] The word "of" is also used as a preposition to "indicate inclusion in a number, class or whole," such as in the phrase "one of us," or to "indicate qualities or attributes," such as in the phrase "a woman of courage."[59]

It is not grammatically correct to split the clauses of MCR 3.993(A)(1) into two sections between the word "order" and the word "of." This split would make the clause "of disposition placing a minor under the supervision of the court" start with a preposition and read awkwardly. Further, as explained above, the placement of the word "of" between a noun "order" and the noun "disposition" typically indicates either that the second noun is included in a class of, or is a quality of, the first noun. In context, the word "of" converts the word "disposition" into an adjectival phrase, modifying the noun "order" to specify that the type or kind of order is a *dispositional* order.

Second, this reading is consistent with the context of the statute. The words "order of disposition" appears as a single phrase in another portion of the child protection court rules. Specifically, the court rules provide that, at the dispositional hearing, "[t]he court shall enter an order of disposition . . . ."[60] There is no question in that rule, phrase "order of disposition" means that the type of order is a *dispositional* order.

Finally, this reading is consistent with this Court's prior interpretation of the meaning of this clause. In *SLH*, this Court noted that "an initial order of disposition is the first order appealable as of right."[61] While this statement was not crucial to the holding of the case and was thus dictum,[62] the Court's reading in *SLH* illustrates that this Court has previously interpreted MCR 3.993(A)(1) to require a *dispositional order* for an appeal of right.

---

[57] *Black's Law Dictionary* (9th ed).

[58] *Farmers Ins Exch v Farm Bureau Gen Ins Co of Mich*, 272 Mich App 106, 113; 724 NW2d 485 (2006).

[59] *Random House Webster's College Dictionary* (1997).

[60] MCR 3.973(F)(1).

[61] *In re SLH*, 227 Mich App at 669 n 13.

[62] See *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007).

Thus, from this clause alone, a parent may only appeal as of right "an order of disposition," not merely an order. However, we cannot consider this clause in isolation. We must consider the other clauses in the phrase to determine whether this interpretation renders portions of MCR 3.993(A)(1) surplusage.

### 3. TYPES OF CASES TO WHICH MCR 3.993 APPLIES

We first note that MCR 3.993 does not apply *solely* to child protective proceedings. Chapter 3 of the Michigan Court Rules concern several types of special proceedings and subchapter 3.900 involves a variety of proceedings involving juveniles. Included in subchapter 3.900 are not only child protective proceedings, but also juvenile delinquency proceedings,[63] waive and designated proceedings in which a juvenile is tried as an adult for a crime,[64] juvenile guardianships,[65] and minors' personal protection orders.[66] MCR 3.993 *specifically* applies to *both* delinquency and child protective proceedings.[67] Accordingly, we will discuss both types of proceedings in the following sections.

### 4. "PLACING A MINOR UNDER THE SUPERVISION OF THE COURT"

#### a. OVERVIEW

At oral arguments, counsel for McCarrick indicated that the standard interpretation of the phrase "placing a minor under the supervision of the court" is that the trial court places the child under court supervision when the trial court exercises jurisdiction over the child. However, we conclude that this is not the plain meaning of this phrase.

#### b. CHILD PROTECTIVE PROCEEDINGS

As can be seen in the background law section of this opinion, the trial court does not place a minor "under the supervision of the court" in child protection law. Rather, it places the child in the parent's home, out of the home, or in foster care.[68] MCR 3.921 states that the trial court shall notify "the *agency* responsible for the care and supervision of the child" regarding

---

[63] See MCR 3.931.

[64] See MCR 3.950 and MCR 3.951.

[65] See MCR 3.979.

[66] See MCR 3.981.

[67] MCR 3.901(B)(1).

[68] See MCR 3.695(A)(11); MCR 3.973(G).

dispositional review hearings.[69] Other court rules indicate that the agency is "responsible for the care and supervision of the child" as well.[70]

### c. JUVENILE DELINQUENCY PROCEEDINGS

In juvenile delinquency proceedings, the trial court issues orders of disposition.[71] It may place the minor "under the supervision of the court in the juvenile's own home or in the home of an adult who is related to the juvenile," and it may "order the terms and conditions of probation or supervision . . . ."[72] The trial court may also "place the juvenile in a suitable foster care home subject to the court's supervision."[73] Finally, the trial court may place the juvenile in a private or public agency, institution, or facility.[74]

Accordingly, we conclude that we need not determine the common usage of the phrase "under the supervision of the court." Instead, on the basis of the context of this phrase and its placement in the general scheme of the court rules, we conclude that it means exactly what it says: a trial court places a minor under the supervision of the court when the trial court *orders* the minor placed under the supervision of the court. The trial court may place a minor under the supervision of the court in juvenile delinquency proceedings, and it does so by issuing an order of disposition.

### 5. "REMOVING A MINOR FROM THE HOME"

### a. CHILD PROTECTIVE PROCEEDINGS

The trial court may remove a minor from the home in both child protection and juvenile delinquency proceedings. In child protective proceedings, the trial court may remove the minor from the home through the use of an order before or after an emergency removal,[75] at the preliminary hearing,[76] or at a dispositional review hearing.[77] If the trial court removed the child

---

[69] MCR 3.921(B)(2)(a) (emphasis added).

[70] See MCR 3.973(E)(2) and (F)(3); MCR 3.975(C)(2).

[71] MCL 712A.18(1).

[72] MCL 712A.18(1)(b) and 18(2).

[73] MCL 712A.18(1)(c).

[74] MCL 712A.18(1)(d) and (e).

[75] MCR 3.963.

[76] MCR 3.695(A)(11).

[77] MCR 3.973(G).

before the initial dispositional hearing, it must review its placement decision in the first dispositional order.[78]

### b. JUVENILE DELINQUENCY PROCEEDINGS

In juvenile delinquency proceedings, the trial court may also issue an order of disposition removing the minor from the home,[79] and it may "place the juvenile in a suitable foster care home subject to the court's supervision[,]" or in a public or private institution, agency, or facility.[80]

Accordingly, there is no conflict regarding the meaning of the phrase "removing the child from the home." The trial court removes the child from the home when the trial court places the child in a location outside the parent's home.

### 6. INTERACTION OF THE COMPONENT CLAUSES

McCarrick contends that requiring a parent to appeal from a dispositional order renders portions of MCR 3.993(A)(1) surplusage because every order of disposition removing the minor from the home is also an order of disposition that places the minor under the supervision of the court. We disagree.

McCarrick's assertion rests on the asserted common understanding of the phrase "placing a minor under the supervision of the court." McCarrick asserted at oral arguments that attorneys commonly understand this phrase to mean that the trial court places a minor under the supervision of the court when it exercises its jurisdiction over the child. But for the reasons stated above, we conclude that the Michigan Supreme Court did not refer to this common understanding when it used this phrase. Reading MCR 3.993 in context with the statutes that govern the types of actions to which it applies, we conclude that the Michigan Supreme Court used the phrase "placing a minor under the supervision of the court" to refer to the specific action the trial court may take in a juvenile delinquency proceeding.

Accordingly, we reject McCarrick's assertion that our more natural reading of MCR 3.993(A)(1)—requiring the order appealed by right to be a dispositional order—renders portions of MCR 3.993(A)(1) surplusage. MCR 3.993 applies to both juvenile delinquency and child protective proceedings. In juvenile delinquency proceedings, the trial court may issue an order of disposition that (1) places a minor under the supervision of the court, (2) places the minor outside the home, or (3) does both. The more natural reading of MCR 3.993(A)(1)— that a parent may appeal as of right (1) an order of disposition that places a minor under the supervision of the court, or (2) an order of disposition that removes the minor from the home— does not render any portion of MCR 3.993 surplusage.

---

[78] MCR 3.973(G).

[79] MCL 712A.18(1)(c), (d), and (e).

[80] MCL 712A.18(1)(c).

## 7. PRACTICAL CONCERNS

McCarrick asserts that it is imperative that this Court interpret MCR 3.993 in a fashion that allows a parent to appeal the child's removal as of right because it will lead speedy review of removal issues. We do not disagree with the importance of the trial court's removal decision and the impact that such a decision can have on the child's wellbeing and the progress of the case. However, as *McClain/Waters/Skinner* and *White* illustrate, claiming an appeal of right from the order removing the child from the home is not likely to result in a faster resolution than claiming an appeal of right from the first dispositional order. Further, a respondent parent may file an application leave to appeal the trial court's removal decision,[81] and may file the application on an emergency basis in appropriate cases.[82]

## 8. CONCLUSION

We conclude that MCR 3.993(A)(1) requires the order appealed to be an "order of disposition." Therefore, a respondent parent may appeal (1) an order of disposition that places a minor under the supervision of the court, or (2) an order of disposition that removes the minor from the home. But a respondent parent may not appeal *any* order that removes the minor from the home. The order must be an order *of disposition*.

Accordingly, we conclude that McCarrick was not entitled to appeal by right the trial court's removal orders following the preliminary hearings in Docket Nos. 315510 and 317403. While this Court might at its discretion grant leave in these dockets to address McCarrick's substantive issues, we conclude that it is not necessary to do so because those dockets raise the same issues that McCarrick raises in Docket No. 318475, in which this Court has already granted leave.

## III. ORDER REMOVING THE INDIAN CHILDREN

In Docket No. 318475, this Court granted McCarrick's delayed application for leave to appeal the substantive issues she raised in Docket Nos. 315510 and 317403 regarding the sufficiency of the trial court's order removing the children from her home under the ICWA and the Family Preservation Act. This Court granted McCarrick's application limited to the issues raised in the application and supporting brief. McCarrick's application challenged both the sufficiency and substance of the trial court's findings at both the March 8, 2013 and the June 26, 2013 removal hearings. We conclude that the trial court erred when it removed McCarrick's children from the home without any testimony from a qualified expert witness regarding the potential damage to the children.

---

[81] See MCR 3.993(B).

[82] See MCR 7.205(F).

## A. STANDARD OF REVIEW

This Court reviews de novo issues of law, including the interpretation and application of ICWA and the Family Preservation Act.[83] We review for clear error the trial court's findings of fact underlying the legal issues.[84] A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake.[85]

## B. LEGAL STANDARDS

Congress enacted ICWA in 1978 to respond to abusive child welfare practices that separated large numbers of Indian children from their families and harmed the children, their parents, and the Indian tribes.[86] "ICWA establishes various substantive and procedural protections intended to govern child custody proceedings involving children."[87] ICWA requires the trial court to consider the testimony of a qualified expert witness to determine whether the Indian child is likely to be seriously damaged if he or she remains in the parent's care:

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.[88]

On January 2, 2013, the Michigan Legislature passed the Family Preservation Act.[89] The Family Preservation Act provides that an Indian child may not be removed, placed in foster care, or remain removed unless an expert witness testifies regarding the active efforts provided and the likelihood of damage to the child:

> An Indian child may be removed from a parent or Indian custodian . . . only upon clear and convincing evidence, that includes the testimony of at least 1 expert witness who has knowledge of child rearing practices of the Indian child's tribe, that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, that the active efforts were unsuccessful, and that the continued

---

[83] *In re JL*, 483 Mich 300, 318; 770 NW2d 853 (2009); *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012).

[84] *Morris*, 491 Mich at 97.

[85] *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

[86] *Morris*, 491 Mich at 97.

[87] *Id*. at 99.

[88] 25 USC 1912(e).

[89] 2012 PA 565.

custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.[90]

## C.  SERIOUS EMOTIONAL OR PHYSICAL DAMAGE

First, McCarrick contends that the trial court's findings were not sufficient because it only found that the children were likely to suffer harm, not that the children were likely to suffer damage.  We conclude that the trial court's finding complied with both ICWA and the Family Protection Act.  McCarrick provides no authority from which this Court could conclude that "harm" and "damage" are different things.  As commonly defined, the word "harm" means "injury or damage," the word "injury" means "harm or damage done or sustained," and the word "damage" means "injury or harm that reduces value, usefulness, etc."[91]  Given that each of these words refers to the other in its definition, we conclude that these words are synonymous for the purposes of these acts.  Therefore, we conclude that the trial court's finding of harm was sufficient to satisfy both ICWA and the Family Preservation Act.

Next, McCarrick contends that the trial court failed to comply with ICWA and the Family Preservation Act when it ordered the children removed from McCarrick's care because O'Neil did not opine about whether McCarrick's continued custody was likely to result in serious emotional or physical damage to the children.  We agree.

Both ICWA and the Family Preservation Act provide that the trial court may not place an Indian child in foster care without a determination supported by the testimony of a qualified expert witness.  ICWA provides that that "[n]o foster care placement may be ordered in such proceeding in the absence of a determination, . . . *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[92]  Similarly, MCL 712B.15 provides that the trial court may remove an Indian child "only upon clear and convincing evidence, *that includes* the testimony of at least 1 expert witness who has knowledge of child rearing practices of the Indian Child's tribe, that . . . the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

We note that, according to the Bureau of Indian Affairs, one of the major purposes of the qualified expert witness is to "speak specifically to the issue of whether continued custody . . . is likely to result in serious physical or emotional damage to the child."[93]  While agency interpretations are not binding and cannot conflict with the plain language of the statute, such

---

[90] MCL 712B.15(2).

[91] *Random House Webster's College Dictionary* (1997).

[92] 25 USC 1912(e).

[93] Guidelines for State Courts; Indian Child Custody Proceedings, D.4. Qualified Expert Witnesses, 44 Fed Reg 67584, 67593 (November 26, 1979).

interpretations are entitled to respectful consideration.[94]  Further, this Court and other courts have recognized that one of the purposes of the expert witness is to diminish the risk of cultural bias in the proceedings.[95]

Here, O'Neil testified at the hearing regarding the efforts provided to McCarrick and the success of those efforts.  However, O'Neil did not testify about the possible damage to the children.  Sheppard, who was not a child-rearing expert on the practice in the children's tribe, testified that one of the children indicated that one of the other children was "shooting up drugs."  Sheppard also testified that one of the children told her that McCarrick was aware that they were using marijuana and only asked them not to smoke in the house.  But Sheppard also failed to testify regarding the possibility of emotional or physical damage to the children.

While it may appear obvious that drug use has the potential to damage children, ICWA and the Family Preservation Act require the trial court's determination of damage to include the testimony of a qualified expert witness.  *Here, there was simply no testimony on this element, much less testimony by O'Neil, the qualified expert witness.*  We conclude that the trial court's determination regarding the damage to the children did not comply with ICWA or the Family Preservation Act because the trial court's determination of damage did not include the testimony of a qualified expert witness.

## D.  ADDITIONAL ISSUES

McCarrick contends that the trial court erred by continuing the children's removal with the June 26, 2013 order without considering whether the children were at a continued risk of damage.  Given our conclusion regarding the trial court's March 8, 2013 removal order, we need not address this issue.

McCarrick also contends that the trial court's active efforts findings were insufficient under the Family Preservation Act.  We disagree.

"The timing of the services must be judged by reference to the grounds for seeking termination and the relevance to the parent's current situation."[96]  Here, McCarrick contends that there was no evidence (1) that the Department made active efforts to address substance abuse, and (2) of the timing of the services.  However, O'Neil testified that she provided the services from September 2011 to December 2011.  And the Department never alleged that McCarrick abused substances.  The Department alleged that McCarrick improperly supervised the children, who were using substances.  O'Neil testified about the extensive services McCarrick received in 2011, including behavioral health and parenting services.  These types of services target a

---

[94] *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 100-101; 754 NW2d 259 (2008).

[95] See *In re Elliott*, 218 Mich App 196, 207; 554 NW2d 32 (1996).  Also see, e.g., *Matter of NL*, 754 P2d 863 (OK, 1988); *State ex rel Juvenile Dep't of Lane Co v Tucker*, 710 P2d 793 (Or App, 1985).

[96] *JL*, 43 Mich at 325.

parent's parenting ability, which is directly relevant to whether the Department made active efforts to assist McCarrick to properly supervise the children. The services occurred a little more than a year before the inception of the current case.

Accordingly, we conclude that the trial court did not clearly err when it found that the Department made active efforts to prevent the breakup of McCarrick's family. O'Neil's testimony provided evidence about the timing of the services and the relevance of the services to McCarrick's situation.

Finally, McCarrick contends that the evidence was insufficient to support the trial court's active efforts finding because no one testified regarding each element of MCL 712B.3(a)'s active efforts definition. MCL 712B.3(a)'s definition of active efforts provides twelve elements that the Department must do or address in order to engage in active efforts. Though McCarrick contends that there was no evidence that the Department complied with several elements, such as utilizing culturally appropriate services or having the child's tribe evaluate McCarrick's family, O'Neil testified that she works for the Sault Tribe of Chippewa Indians and worked with McCarrick to provide referrals to Sault Tribe Behavioral Health and other extensive services. After our review of O'Neil's testimony, we conclude that the trial court had sufficient evidence from which to conclude that the Department had complied with MCL 712B.3(a).

## E. REMEDY

McCarrick contends that the trial court's failure to comply with ICWA and the Family Protection Act renders the trial court's removal invalid. We conclude that conditional reversal is an appropriate remedy in this case.

ICWA provides that "[a]ny child who is the subject of any action for foster care placement . . . [and] any parent or Indian custodian . . . may petition any court of competent jurisdiction to invalidate such action upon showing that such action violated any provision of [42 USC 1912]."[97] The Family Protection Act provides the same remedy for a violation of MCL 712B.15.[98] In cases in which the trial court has violated ICWA by failing to provide the child's tribe with notice, this Court conditionally reverses.[99]

McCarrick does not provide any argument to support her contention that this Court should automatically reverse in this case. We note that the provisions of ICWA and the Family Protection Act are not jurisdictional requirements.[100] Automatic reversal is also not consistent with this Court's disfavor of automatic reversals.[101] And when the trial court improperly

---

[97] 25 USC 1914.

[98] MCL 712B.39.

[99] *Morris*, 491 Mich at 122; *In re Johnson*, 305 Mich App 328, 333-334; ___ NW2d ___ (2014).

[100] See *Morris*, 491 Mich at 118-119.

[101] *Id*. at 120.

removes an Indian child, the trial court need not return the child if doing so would subject the child to a risk of immediate danger.[102]  Given that the record evidence includes that one child was injecting drugs and attempted suicide, we decline to automatically reverse the trial court's order in this case because doing so could place the child in danger and this Court is not in a position to determine whether the danger would be immediate.

We conditionally reverse and remand for the trial court to determine whether McCarrick's continued custody would result in serious emotional or physical damage to the children.  If the trial court cannot support its finding with testimony from a qualified expert witness at a hearing, it must return the children to McCarrick's home.  But if a qualified expert witness testifies that McCarrick's continued custody would result in serious emotional or physical damage to the children, the trial court may continue the children in their current placements.

## IV.  COURT RULE CHANGE

We also suggest that the Supreme Court consider modifying MCR 3.993 in order to permit a parental appeal of right, at least under some circumstances, from removal order when a child is removed from his or her parents at a stage prior to adjudication.

Where a parent's action or neglect threatens a child's safety sufficient to justify removal at the outset of a child protective proceeding, it is neither surprising nor objectionable that such removal would correlate with a higher likelihood of termination.  However, as several recent cases have shown, the decision to remove a child can substantially affect the balance of the child protective proceedings even where the initial concerns are eventually determined to have been overstated.[103]  In such cases, the parent may find his or her parental rights terminated not because of neglect or abuse, but because of (1) a failure to adequately comply with the Department's directives and programs and (2) a loss of bonding due to a lack of parental visitation.

Permitting a parent to appeal a removal order as a matter of right may be one vehicle to minimize the likelihood of this unfortunate occurrence.  But this Court does not have rulemaking authority; that authority lies solely with the Michigan Supreme Court.[104]  That Court has the power to issue proposed rules, obtain comment from the bench, bar, and broader community, and then determine as a matter of judicial policy whether and how to modify the relevant procedure.  Whether or not the Supreme Court ultimately decides that a rule change is wise, we have little doubt that an inquiry into the question will be of benefit to the children and parents of Michigan.

---

[102] 25 USC 1920; *Morris*, 491 Mich at 118.

[103] See *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014); *In re Farris*, unpublished opinion per curiam of the Court of Appeals, issued August 8, 2013 (Docket Nos. 311967), lv gtd ___ Mich ___; 852 NW2d 900 (2014); *In re LaFrance*, ___ Mich App ___; ___ NW2d ___ (September 23, 2014; Docket Nos. 319219 & 319222).

[104] See MCR 1.201.

## V. CONCLUSION

In Docket Nos. 315510 and 317403, we conclude that McCarrick is not entitled to appeal as of right the trial court's order removing the child from the home because the order is not a *dispositional order*. In Docket No. 318475, we conclude that the trial court erred when it removed the children from McCarrick's home without testimony from a qualified expert concerning the potential damage to the children.

We conditionally reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ William C. Whitbeck
/s/ Cynthia Diane Stephens