*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SARTAIN-RODRIGUEZ, Minors.

UNPUBLISHED
February 29, 2024

No. 366690
Ingham Circuit Court
Family Division
LC Nos. 22-000790-NA;
22-000791-NA;
22-000792-NA

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Respondent-father and his wife are the parents of three minor children. In April 2023, the children were removed from their parents' custody and placed into foster care after the trial court found the family's unsanitary living conditions and inadequate housing posed a significant risk of harm to their wellbeing. On appeal, respondent-father is not challenging the initial removal of the children from his care. Instead, he challenges the trial court's May 2023 order continuing the removal of his children.[1] Respondent-father argues that the trial court clearly erred by finding continued removal of his children was necessary because he obtained suitable housing and there was no longer a substantial risk of harm to the children. Because the evidence supports the trial court's findings that respondent-father had not made sufficient progress towards alleviating the conditions that brought the children under the court's jurisdiction, the trial court did not clearly err by continuing removal. We affirm.

## I. BACKGROUND

This case arises out of the alleged neglect of the children's personal hygiene, neglect of the sanitary conditions of the home, and inadequate housing. In September 2022, the parents were involved in child protective proceedings in California as a result of alleged physical abuse and domestic violence. At the time of the proceedings, the family was living in a hotel room. Despite

---

[1] Although respondent-father's wife was a co-respondent in the lower court proceedings, only respondent-father is challenging the order on appeal.

being ordered not to leave California, the parents absconded with the children to Michigan. Upon their departure, a California caseworker reported that the parents were $500 behind in rent and their hotel room had "a foul odor, was in disarray, and the trash was overfilled."

Once in Michigan, Children's Protective Services (CPS) and the Michigan Department of Health and Human Services (DHHS) were made aware of the parents' involvement in the California proceedings and apprehension orders were issued taking the children into the care and custody of DHHS. The parents subsequently filed a motion to review placement, which the trial court granted, and the children were returned to their care subject to several conditions. DHHS later filed a petition requesting that the trial court take jurisdiction over the children under MCL 712A.2(b)(1) (child subjected to substantial risk of harm) and (2) (unfit home environment). DHHS did not seek removal of the children but instead recommended that the children remain in the parents' care subject to ongoing conditions. After a preliminary hearing, the trial court authorized the petition and ordered that the children remain placed in the parents' custody under DHHS's supervision.

Over the next few months, the trial court held several pretrial hearings to assess the parents' progress in obtaining suitable housing and to offer additional services. Initially, the parties believed the parents were benefiting from the services, and DHHS anticipated dismissal of the petition at adjudication. But the parents' progress soon reversed course. In December 2023, the family faced eviction from a homeless shelter because of the unsanitary conditions of their living quarters. The parents were referred to the Intensive Neglect Services (INS) Program but failed to make progress toward obtaining adequate housing. Although the family was initially able to avoid eviction, within a few months, they again faced eviction because of the parents' neglect of the cleanliness of the room and their children's hygiene. During a home visit in April 2023, CPS workers, Brett Gates and Stephanie Dunnings, observed foul-smelling garbage strewn about the room. Respondent-father showed little concern about the garbage and could not explain why it had not been taken out to the dumpster. The children also appeared visibly unclean, and their hair had become matted. Respondent-father admitted to the CPS workers that the family was facing eviction about 10 days later but confirmed that he had not secured alternative housing. After the home visit, the trial court entered apprehension orders removing the children from their parents' home and placed them in foster care pending a removal hearing.

DHHS then filed an amended petition to remove the children because the parents had not secured a plan for housing or benefited from services, the children were unclean, and the home was unsanitary and presented a safety risk. The petition alleged that school employees reported that the children had been wearing "the same clothing for a week" and their parents had "turned clothing inside out" when the children's clothes were dirty. The children were also "being teased by their peers due to being smelly" and they could "not recall the last time they bathed." During an April 5, 2023 custody review hearing, Gates testified that the parents did not use offered resources to maintain appropriate hygiene and sanitary conditions, made no progress toward obtaining adequate housing, and were facing eviction for a second time for failing to maintain appropriate sanitary conditions of their home. Further, Gates noted that while the parents cleaned the living space when told to do so, the home would quickly revert back to unsanitary conditions. Gates also indicated that the children were being emotionally impacted and having difficulty with their peers at school as a result of their uncleanliness. The trial court authorized the petition and continued removal of the children.

At adjudication, the parents pleaded to jurisdiction, admitting that they had neglected the basic hygiene of the children and cleanliness of their home; they were unsuccessful in obtaining adequate housing despite the extensive services offered to them; and these conditions affected the children's physical and mental health. The trial court also heard additional testimony on whether the children's removal remained appropriate. Gates and INS worker, Erin Hamel, testified that the parents' neglect of the children's hygiene and cleanliness of the home, failure to make progress toward obtaining adequate housing, and imminent eviction with no established next steps posed a substantial risk of harm to the children's health and well-being. The trial court agreed and found that continued removal was appropriate. The trial court stated that "[w]hen housing is confirmed with this family, I believe that with the parent's active participation in services, reunification should be swift." The court also indicated that the parents could petition for a change of placement before the next hearing if they obtained housing that was approved by DHHS.

Less than a month later, at a May 2023 dispositional hearing, Child and Family Charities caseworker, Danika Fenska, reported that the parents were living in a hotel, respondent-father had obtained a job at the hotel to reduce their daily rate, and she observed their hotel room as clean. Respondent-father described the hotel room as a "semi-studio apartment" with "a full kitchen and two beds" as well as "room to put a play pen and also a couple of beds if need be." The trial court questioned whether the hotel room would be appropriate, permanent housing for three young children and indicated more evidence would need to be presented regarding the adequacy of the housing at the next review hearing. Based on its previous findings regarding removal and the evidence presented during the hearing, the trial court found that removal remained necessary and appropriate, and continued the children's placement in foster care. This appeal followed.

## II. DISCUSSION

Respondent-father contends that the trial court clearly erred by finding the continued removal of his children was necessary because he obtained suitable housing and there was no longer a substantial risk of harm to the children.

We review a trial court's factual findings for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (cleaned up). "This Court reviews de novo questions of law, including the interpretation and application of our court rules." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 445; 861 NW2d 303 (2014). That means we review the legal issue independently, with no required deference to the trial court. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). "Our purpose when interpreting court rules is to give effect to the intent of the Michigan Supreme Court," and "[i]f the plain and ordinary meaning of a court rule's language is clear, judicial construction is not necessary." *McCarrick/Lamoreaux*, 307 Mich App. at 446.

"In child protective proceedings, the trial court may remove the minor from the home through the use of an order before or after an emergency removal, at the preliminary hearing, or at a dispositional review hearing." *Id*. at 459 (cleaned up). "If the trial court removes the child before the initial dispositional hearing and does not terminate its jurisdiction in its dispositional order, it must review its placement decision under MCR 3.975." *Id*., citing MCR 3.966(A)(2) and MCR 3.973(G)(1). Under MCR 3.975(A), the court must evaluate "the continued need and

appropriateness for the child to be in foster care[.]" In doing so, "[t]he court must decide the extent of the progress made toward alleviating or mitigating conditions that caused the child to be, and to remain, in foster care." MCR 3.975(F)(2). After its review, the court may order that the child be returned home, change the child's placement, or continue its previous order of removal. MCR 3.975(G)(1), (2), and (6).

Throughout the lower court proceedings, respondent-father's ability to obtain permanent and stable housing was a significant concern. At the time of the May 2023 dispositional hearing, respondent-father had only recently secured housing after being evicted, and was living in a hotel room that he described as a "semi-studio apartment," with two beds and "room to put a play pen and also a couple of beds if need be." Although the caseworker reported that the hotel room was clean when she viewed it, respondent-father repeatedly demonstrated that he could not consistently maintain sanitary living conditions. The trial court acknowledged that respondent-father's recent employment and new housing constituted a step in the right direction. But based on respondent-father's struggle to maintain stable housing and hygienic living conditions for his children, the court questioned whether the hotel room was an appropriate and permanent housing solution and indicated more evidence would be needed to make that determination.[2]

Under MCR 3.975(G)(1) and (6), the trial court was permitted to order that the children be returned to respondent-father's custody or continue their placement in foster care. Based on the evidence presented, the trial court chose to continue removal pending further evidence of the adequacy of respondent-father's new housing arrangements. Because a trial court has "broad authority in effectuating dispositional orders once a child is within its jurisdiction," *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014), and, given the conditions that necessitated the children's removal and respondent-father's lack of consistent progress toward alleviating those conditions, we are not definitely and firmly convinced that the trial court erred by finding that the children's placement in foster care remained necessary and appropriate. See *McCarrick/Lamoreaux*, 307 Mich App at 463. Therefore, we affirm the May 2023 order continuing the placement of the children in foster care.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett

---

[2] Respondent-father emphasizes in his brief that continued removal was inappropriate because the trial court had previously indicated "if suitable housing-reunification ASAP," and the newly obtained hotel room constituted suitable housing. While the hotel room was clean on the one occasion it was observed, there was no determination made that the room was suitable for three young children or that it could be consistently kept clean.