*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JOHNSON, Minors.

UNPUBLISHED
February 18, 2026
2:11 PM

No. 377487
Berrien Circuit Court
Family Division
LC No. 2025-000043-NA

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

After the preliminary hearing and trial court's order that removed respondent-mother's four children from her care, respondent-mother now appeals, arguing that the trial court failed to make the necessary findings. Because the trial court did not clearly err, we affirm.

## I. BACKGROUND

Children's Protective Services (CPS) petitioned the trial court, alleging that the children came within the trial court's jurisdiction under MCL 712A.2(b)(1) and (2) and requesting that the trial court authorize the petition and issue an order removing the children from respondent's home. CPS received a report alleging that respondent abused the children, including by hitting them with her hand and a broomstick and never letting the children leave the home.

When the CPS specialist went to the apartment complex where respondent lived with the children and the children's father to investigate, the property manager reported his suspicions of domestic violence and physical abuse within respondent's home, as well as his concern that the children were often being left home alone. While at the apartment complex, the CPS specialist was able to contact respondent, who stated that she and the children were out of town for the day and would be able to meet with CPS the following day. The CPS specialist then observed a child through the window of respondent's home, so she contacted law enforcement. Respondent arrived and admitted that her children were upstairs in the apartment with their father, but the father jumped from the balcony because he was scared. When the CPS specialist entered respondent's home, she noticed a strong urine odor, traces of feces in the carpet, matted hair and a strong odor on the children, and holes and exposed electrical wiring in the children's bedroom. The CPS

-1-

specialist created a safety plan with respondent, which included improving the conditions of the home.

The CPS specialist was unable to speak with the children, but they were examined by a sexual-assault nurse examiner who reported that the children had marks and bruises on their bodies. CPS received a second report about abuse, alleging that respondent left the children in the home for multiple days at a time and that the children were not regularly attending school. The CPS specialist inquired about the children's medical appointments and learned that the children were last examined over a year before and that they failed to appear for their appointments scheduled months earlier, with no future appointments scheduled.

The CPS specialist spoke to respondent about implementing a modified safety plan to address domestic violence after respondent called the police because the children's father verbally threatened her. The children participated in Children's Assessment Center (CAC) interviews, in which they reported witnessing physical violence between respondents; two of the children also disclosed that respondent struck them with belts. Respondent was meeting with CPS and Department of Health and Human Services (DHHS) to discuss her situation, including respondent's rescheduling of the children's well-child appointments and restricting the children from playing outside because of their eczema. Respondent also acknowledged that she was facing eviction and had no alternative housing, but she did not believe that she would be evicted because she was not immediately evicted when her electricity was shut off "last time."

At the preliminary hearing after CPS filed the petition alleging the above events, the CPS specialist testified about her concerns regarding a recent disconnection notice for electricity, domestic violence, neglect, and isolation of the children. The trial court inquired specifically into the details of these concerns, which led to the CPS specialist expanding on the shut-off notices, the children being locked in their room, and respondent's contact with law enforcement regarding the father, as well as the children disclosing in their CAC interviews that they witnessed the domestic violence. The trial court authorized the petition, noting concerns with the allegations from the children and apartment complex manager, as well as an imminent cutoff of utilities.

For placement, the CPS specialist testified that a paternal aunt was contacted to take the children and that she believed that it was necessary to remove the children from respondent's care because of the ongoing threat of domestic violence and the children witnessing past domestic violence, as well as the threat of isolation and improper supervision. In addition, although there was no sign of feces in the home during the latest visit, the CPS specialist did not observe any other improvements to the apartment living conditions.

"[T]aken together as sum," the trial court concurred with the recommendation of removal but granted ex parte authority to return the children to respondent prior to pretrial. The trial court found that there was sufficient evidence for a contrary-to-the-children's-welfare finding based on the conditions of the home, including observation of poor conditions of the home without proof of improvement in addition to imminent cutoff of utilities, poor supervision, and failure to meet medical needs. Further, the trial court found that respondent did not make significant progress to address those issues despite services being provided. The trial court listed reasonable efforts made to prevent removal, including assistance from DHHS and Families First, FIT referral, random drug screens, assistance with payments of utility bills, and meetings with respondent.

The trial court entered a written order, outlining its findings with respect to the children's welfare and petitioner's reasonable efforts. The order also found that custody with respondent presented a substantial risk of harm to the children and no services were reasonably available to safeguard the children from the risk of harm. Respondent now appeals the removal of her children.

## II. ANALYSIS

Respondent argues that the trial court erred by removing the children from her care because it failed to make the required findings under MCR 3.965(C)(2) and MCL 712A.13a(9). We review for clear error a trial court's factual findings and its ultimate determination on termination. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding or determination is clearly erroneous if the Court is "definitely and firmly convinced that the trial court made a mistake." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 463; 861 NW2d 303 (2014).

At the preliminary hearing for child-protective proceedings, the trial court must decide whether to authorize the filing of the petition and if authorized, whether the children should remain in the home, be returned home, or be placed in foster care pending trial. MCR 3.965(B)(12). The trial court may place the children in foster care if the following conditions are found:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2); see also MCL 712A.13a(9).]

In this case, the trial court did not clearly err when finding that the conditions of MCR 3.965(C)(2) were met and ultimately placing the children in foster care. Respondent mainly argues that there was insufficient evidence for a finding that custody with respondent presented a substantial risk to the children under MCR 3.965(C)(2)(a). But the trial court, through its oral or written order, found that all the conditions under MCR 3.965(C)(2)(a) were met based on the following information presented to it through the CPS specialist's testimony: poor living conditions, lack of supervision, missed medical appointments, disclosures of domestic violence, and reports that respondent struck two of the children with a belt. This was more than just a concern about a future utility shutoff, which respondent argues was the only basis for the trial court's findings. The trial court's findings were supported by the evidence presented.

Respondent argues that the trial court did not find all of the factors of MCR 3.965(C)(2) were met, referencing statements made by the trial court at the preliminary hearing about the conditions. Essentially, respondent is arguing that the trial court did not extensively and explicitly

state its findings for each factor. "A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail," and it is required only to make a record sufficient for this Court to conduct meaningful appellate review. *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020). "If the trial court orders placement of the child in foster care, it must make explicit findings that it is contrary to the welfare of the child to remain at home, MCR 3.965(C)(3), and reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required, MCR 3.965(C)(4)." *In re Benavides*, 334 Mich App 162, 168; 964 NW2d 108 (2020) (cleaned up).

Here, the trial court did as it was required. It made explicit findings regarding the children's welfare and reasonable efforts, both during the preliminary hearing and through the written order. Although the trial court could have said more on the other three factors of MCR 3.965(C), the record—including the trial court's oral and written findings—shows that the trial court made "minimal but adequate findings" supported by the evidence for those factors. See *Williams*, 333 Mich App at 183. Nothing in the record suggests that the trial court did not consider and make findings for all the factors under MCR 3.965(C) when deciding to remove the children. See *id.* at 184 (finding that the trial court failed to make any findings for certain factors because the trial court "did not appear to consider" certain aspects of the case). Therefore, the trial court did not clearly err when removing the children from respondent.

### III. CONCLUSION

Despite respondent-mother's assertions to the contrary, the trial court made the required findings under MCR 3.965(C)(2) and MCL 712A.13a(9) to remove the children from respondent's care and place them into DHHS custody. The record that the trial court produced in this case was sufficient for the Court to conduct meaningful review and to determine that the ultimate determination of removal was not clearly error.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman