*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BENAVIDES, Minors.

FOR PUBLICATION
October 8, 2020
9:00 a.m.

No. 352581
Wayne Circuit Court
Family Division
LC No. 2018-001587-NA

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order removing the minor children, LKB and ZMB, from his custody following the preliminary hearing when it authorized a supplemental petition. We conclude that the trial court did not err in removing the minor children from respondent's custody because there was sufficient evidence that respondent presented a substantial risk of harm to the children when he engaged in "roughhousing" with them over the objection of the caseworker, the children received suspicious bruises from the roughhousing, and one child required hospital treatment for a visible handprint on his face. This evidence satisfied the requirements of MCL 712A.13a(9) to support the removal. Additionally, there was no violation of the requirements that respondent receive notice of the placement, the agency's responsibility to prepare an initial services plan, the elements of the plan, and respondent's voluntary participation in the plan. MCL 712A.13a(10). The precipitating event for the notice to respondent did not occur because the children were placed with their paternal uncle and not removed from their home in light of respondent's voluntary decision to leave the family home. Additionally, the preparation of an initial services plan was unnecessary where respondent was required to participate in services in light of his domestic violence involving the children's mother. Therefore, finding no errors warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS AND PROCEDURAL HISTORY

In September 2018, child protective services (CPS) commenced proceedings after the mother suffered from substance abuse issues that endangered LKB. Although it was known that the mother and respondent, the children's father, were engaged in domestic violence, there was no indication that respondent physically abused the children. Consequently, the children were placed

-1-

in respondent's care. In May 2019, a petition was filed seeking removal of the children from respondent after an incident of domestic violence occurred by respondent against the mother in the presence of the children. Ultimately, respondent was convicted of domestic violence and placed on probation. Additionally, the children missed 50 days of school while living with respondent, and he refused to allow access to his residence for a home assessment. However, the children's paternal uncle allowed CPS into the home to perform the assessment. Respondent was court-ordered to complete parenting, domestic violence, and anger management classes. Respondent resided in a home with the children, the paternal uncle, and the children's grandmother.

The children continued in respondent's custody until January 2020, when petitioner, the Department of Health and Human Services (DHHS), filed a supplemental petition against respondent. It was alleged that he physically abused ZMB in late December 2019, and the agency sought the children's removal from respondent's care. Specifically, the caseworker requested a change of plan petition because respondent slapped ZMB on the face that caused severe bruising and a bloody nose. ZMB was treated at an urgent care facility which apparently documented an observable handprint on the child's face, but he was nonetheless released to the care of respondent. Additionally, the children had a history of unexplained bruises that respondent attributed to "roughhousing." The caseworker had requested that respondent stop this activity. To prevent removal of the children, DHHS had previously referred respondent to domestic violence and anger management classes. The agency also had conducted family team meetings, made home visits, and placed the children in a safety plan with the paternal uncle. However, respondent was only partially compliant with his treatment plan, and he was terminated from parenting classes.

The children's mother was not yet a viable placement because she had not sufficiently completed her treatment plan. Although respondent was also given a treatment plan and allowed to keep the children in his custody while participating in services, the supplemental petition now concluded that there was a risk of harm and sought the children's removal. However, the caseworker sought to place the children with their paternal uncle with whom they were currently residing. Because respondent lived with the children and the paternal uncle, respondent agreed to move out of the home to prevent disruption to the children's living arrangement. The trial court authorized the supplemental petition and ordered the minor children to be removed from respondent's custody and placed with DHHS, but their physical residence continued to be with their uncle.[1]

## II. CHILDREN'S REMOVAL

Respondent alleges the trial court erred in removing the minor children from his custody because there was insufficient evidence to support the requirements of MCL 712A.13a(9) and MCR 3.965(C)(2). Specifically, respondent contends that the safety plan with the paternal uncle and the lack of additional injury between the urgent care visit and the preliminary hearing demonstrated that the children were not subject to a substantial risk of harm, and therefore, the safety plan could continue. We disagree.

---

[1] Our examination of the lower court record reveals that the children were returned to the care of their mother shortly after the preliminary hearing authorizing the supplemental petition.

A trial court's factual findings are reviewed for clear error. *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 191; 848 NW2d 107 (2014). A finding is only clearly erroneous if an appellate court "is left with a definite and firm conviction that a mistake has been made." *In re Diehl*, 329 Mich App 671, 687; 944 NW2d 180 (2019) (quotation marks and citation omitted).

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448; 861 NW2d 303 (2014), quoting MCR 3.965(B)(11) (quotation marks omitted). A child may only be placed in foster care if a court finds all of the following conditions:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9).[2]]

If the trial court orders placement of the child in foster care, it must make explicit findings that "it is contrary to the welfare of the child to remain at home," MCR 3.965(C)(3), and "reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required," MCR 3.965(C)(4). See also *McCarrick/Lamoreaux*, 307 Mich App at 449.

Angelita Pierce, a foster care worker, testified that respondent slapped ZMB causing the child's nose to bleed and leaving a handprint-shaped bruise on his face. Respondent told Pierce he was just roughhousing with the child. This was not the first time one of the children had injuries respondent claimed were from roughhousing. Respondent had a history of domestic violence against the children's mother in their presence. He was referred to anger management, domestic violence, and parenting classes. Although respondent began those services, he had not completed them. After this incident, a safety plan was put in place, and the paternal uncle agreed to prevent the abuse of the minor children.

In light of Pierce's testimony, the referee found "it's, clearly, contrary to the welfare of these two boys to remain in their father's care because of the allegation of severe physical abuse."

---

[2] MCR 3.965(C)(2) is identical in substance to MCL 712A.13a(9).

The referee also concluded that respondent's physical abuse and inappropriate discipline of the children placed them at an extreme risk of harm. The referee also indicated on the form order that: (1) it would be contrary to the welfare of the minor children to remain in respondent's custody, (2) reasonable efforts to prevent removal of the minor children from the home were made, (3) respondent having custody of the minor children would present a substantial risk of harm to the children, (4) no reasonably available service would adequately safeguard the minor children from the risk of harm, and (5) conditions of custody away from the minor children's home were adequate to safeguard the minor children. The trial court adopted the referee's recommendation.

The trial court's findings were not clearly erroneous. The court's order considered all five requirements of MCL 712A.13a(9). Respondent's argument—that the safety plan involving the paternal uncle or other additional services would have been sufficient to protect the minor children—is unpersuasive. The children had a history of suspicious bruises, and respondent failed to stop "roughhousing" with the children despite the agency's request. Further, the bruising and missed schooling occurred while DHHS became involved because of the mother's issues. The injury to ZMB occurred when respondent had received a treatment plan from DHHS, but respondent had not engaged in and benefitted from the services. For these reasons, we are not "left with a definite and firm conviction that a mistake has been made." *Diehl*, 329 Mich App at 687 (quotation marks and citation omitted).

### III. NOTICE OF CHANGE IN PLACEMENT

Respondent also argues that the trial court failed to advise him of his rights under MCL 712A.13a(10) following the placement decision, and this omission constitutes an additional violation of the law. We disagree.

If the DHHS becomes aware of additional abuse or neglect of a child under the jurisdiction of the court and that abuse is substantiated, "the agency shall file a supplemental petition with the court." MCL 712A.19(1). "A preliminary hearing is the formal review of the petition." *In re Hatcher*, 443 Mich 426, 434; 505 NW2d 834 (1993), overruled on other grounds *In re Ferranti*, 504 Mich 1; 934 NW2d 610 (2019). At this stage of the proceeding, the court must determine if the petition should be authorized, and if so, "whether the child should remain in the home, be returned home, or be placed in foster care pending trial." MCR 3.965(B)(12). If the petition is authorized, the court shall order the juvenile placed in "the most family-like setting available consistent with the juvenile's needs." MCL 712A.13a(12). The statute must be liberally construed to ensure the juvenile receives care, guidance, and control conducive to the child's welfare and preferably in the child's own home. MCR 712A.1(3). If the child is abused by a parent, the court may order the parent's removal from the home, and the court shall not leave the child in the home unless it finds that the individual with whom the child is placed will safeguard him from harm. MCL 712A.13a(4), (5).

MCL 712A.13a(10) addresses the child's placement outside the home and provides:

> (10) If the court orders placement of the juvenile outside the juvenile's home, the court shall inform the parties of the following:

(a) That the agency has the responsibility to prepare an initial services plan within 30 days of the juvenile's placement.

(b) The general elements of an initial services plan as required by the rules promulgated under 1973 PA 116, MCL 722.111 to 722.128.

(c) That participation in the initial services plan is voluntary without a court order. [MCL 712A.13a(10).]

When interpreting this statute, we give effect to the legislative intent by examining the plain language of the statute. *In Re Ballard*, 323 Mich App 233, 235; 916 NW2d 841 (2018). If the statute is unambiguous, the Legislature intended the language as expressed, and the statute must be applied as written. *Id*. at 235-236.

The plain language of MCL 712A.13a(10) contains no remedy for the failure to advise the parent of the agency's preparation of an initial services plan and the parent's voluntary participation. However, "an error or defect in anything . . . omitted by the court . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A). Moreover, the statute does not make compliance with MCL 712A.13a(10) a condition for removing a child from his or her home. Therefore, a trial court's failure to inform a respondent of the information required by this provision does not affect the validity of the trial court's order.

Respondent contends that the trial court erred by failing to advise that the children's removal required the agency prepare an initial services plan, the plan must contain the statutory elements, and the plan's participation was voluntary. MCL 712A.13a(10). However, in light of the plain language of the statute, we conclude that MCL 712A.13a(10) did not apply to respondent's circumstances. Although it was concluded that the children needed to be removed from respondent's care, it was determined that the children did not need to be removed from their home where the safety plan with the paternal uncle was established. Rather, respondent agreed to leave the home to allow the children to remain in the residence to avoid a disruption to the children's environment. Thus, the precipitating event, the placement of the juvenile outside the home, did not occur, and therefore, the trial court was not required to advise of the preparation of an initial services plan. MCL 712A.13a(10). Moreover, although the petition here stems from the children's mother, respondent himself is now also subject to it and has been required to participate in services because of the domestic violence respondent perpetrated against the mother in the children's presence. Because respondent was already required to participate in services, there was no need to discuss with him an initial services plan, nor was there any need to apprise him of any conditions per MCL 712A.13a(10). Respondent is not entitled to appellate relief under these circumstances.

Affirmed.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel