*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. D. MARTIN, Minor.

UNPUBLISHED
November 10, 2022

No. 360969
Wayne Circuit Court
Family Division
LC No. 2022-000294-NA

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order removing her minor child, RDM, from her custody upon finding that there was probable cause to conclude that removal was warranted to assure RDM's immediate safety. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In June 2022, one of RDM's two older siblings, MS, disclosed that her father (RDM's legal father)[1] had sexually abused MS while she was staying with the father in Oregon in 2018. Petitioner, the Department of Health and Human Services (DHHS), began an investigation. At the time of the investigation, RDM's two older siblings had been placed in separate guardianships with relatives. During forensic interviews, both children revealed that respondent knew about and had allowed her boyfriends and other men to sexually assault them, beginning when they were as young as nine years old. MS stated that respondent had allowed between 10 and 12 different men to molest her in return for drugs. In addition, the other sibling, ZS, claimed that respondent's current boyfriend (and the alleged biological father of RDM) had masturbated in her presence and, on another occasion, had sexually abused her.

After the disclosures, RDM (who at the time was four years old, autistic and nonverbal) was removed from respondent's care and placed in the home of ZS's guardian while DHHS

---

[1] According to respondent, RDM's legal father is not her biological father. Only respondent and RDM's legal father were respondents in the proceedings below at the time the removal order was issued. Neither RDM's legal father nor the alleged biological father are parties to this appeal.

continued its investigation. Respondent agreed to a "voluntary safety agreement" under which RDM would reside away from her home while the investigation was completed. In March 2022, ZS's guardian informed DHHS that she could no longer provide care for RDM. Respondent then informed DHHS that she no longer consented to the voluntary safety agreement and wanted RDM returned to her care. DHHS subsequently filed a petition for removal of RDM and termination of respondent's parental rights. RDM was removed from respondent and placed in a nonrelative foster home.

At the preliminary hearing, Kevin Rader, from Children's Protective Services (CPS), testified regarding the DHHS investigation and the allegations in the petition. Rader elaborated on the statements the siblings had made during their forensic interviews regarding their alleged sexual abuse, and further informed the trial court that he intended to file an amended petition for termination of respondent's parental rights to MS and ZS. Rader also informed the trial court that RDM had no birth certificate and no social security number, had been diagnosed with autism, and was nonverbal. Rader stated that despite being unable to speak, RDM had displayed some behaviors that could indicate sexual abuse; however, a medical examination would need to be conducted to determine whether abuse had occurred. When asked what efforts were made to prevent RDM's removal, Rader also stated that the CPS investigation had resulted in the Federal Bureau of Investigation being notified of the allegations of sexual abuse and sex trafficking of children in this case.

The trial court found that DHHS had made reasonable efforts to prevent RDM's removal and that it was contrary to RDM's welfare to remain in respondent's care. The trial court authorized the removal, continued RDM's placement in foster care, and suspended respondent's visitation. The trial court found probable cause that one or more of the allegations in the petition were true and that placement with respondent presented a substantial risk of harm to RDM's life, physical health, and mental well-being. The trial court found that no service or other arrangement was reasonably available to adequately safeguard RDM from the risk of harm. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's factual findings supporting an order of removal. See *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is only clearly erroneous if this Court "is left with a definite and firm conviction that a mistake has been made." *Id*., quoting *In re Diehl*, 329 Mich App 671, 687; 944 NW2d 180 (2019).

## III. ANALYSIS

Respondent argues that the trial court clearly erred by finding that RDM was at imminent risk of harm, and by failing to consider options other than removal. We disagree.

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448; 861 NW2d 303 (2014), (quotation marks and citation omitted).

MCR 3.963(B) provides, in relevant part:

(1) The court may issue a written order, electronically or otherwise, authorizing a child protective services worker, an officer, or other person deemed suitable by the court to immediately take a child into protective custody when, after presentment of a petition or affidavit of facts to the court, the court has reasonable cause to believe that all the following conditions exist, together with specific findings of fact:

(a) The child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. . . .

(b) The circumstances warrant issuing an order pending a hearing in accordance with:

(i) MCR 3.965 for a child who is not yet under the jurisdiction of the court . . .

\* \* \*

(c) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(d) No remedy other than protective custody is reasonably available to protect the child.

(e) Continuing to reside in the home is contrary to the child's welfare. [See also MCL 712A.13a(9); MCR 3.965(C)(2).]

If the trial court orders placement of the child in foster care, it must make explicit findings that "it is contrary to the welfare of the child to remain at home," MCR 3.965(C)(3), and "reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required," MCR 3.965(C)(4); *Benavides*, 334 Mich App at 168.

Upon review of the record, we conclude that there is no merit to respondent's argument that the trial court erred because, although there was evidence that respondent had sexually abused RDM's siblings, there was no evidence that respondent had sexually abused RDM. A child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child. "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child . . . ." *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded in part on other grounds *In re Hansen*¸ 285 Mich App 158, 163; 774 NW2d 698 (2009). This Court has held that how a parent treats one child is probative of how that parent may treat other children. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Therefore, it was appropriate for the trial court to evaluate respondent's potential risk to RDM by analyzing how respondent had treated RDM's siblings. *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011).

Further, the trial court made findings that complied with the requirements for removal found in MCL 712A.13a(9) and the relevant court rules. The trial court found that continuing custody of RDM with respondent presented "a substantial risk of harm to his life, physical health,

or mental well-being." MCL 712A.13a(9)(a); MCR 3.963(B)(1)(a). The trial court found that continuing RDM's residence in respondent's home was contrary to his welfare. MCL 712A.13a(9)(c); MCR 3.963(B)(1)(e). And trial court found that DHHS had made reasonable efforts to prevent removal. MCL 712A.13a(9)(d); MCR 3.963(B)(1)(c).

Given the testimony of sexual abuse and trafficking of MS and ZS, the trial court did not clearly err by finding that removal was necessary to protect RDM from the risk of imminent harm. The fact that much of the abuse of RDM's sisters was perpetrated in order for respondent to obtain illegal drugs establishes an additional risk of harm arising from respondent's involvement with illegal drugs. In addition, the evidence that RDM was autistic and nonverbal placed him at additional risk. Given the severe risk to children in respondent's home if the allegations of respondent's sexual abuse and trafficking of RDM's siblings in order to obtain drugs proved to be true, the trial court did not clearly err by concluding that RDM faced an imminent risk of harm in respondent's care. *Hudson*, 294 Mich App at 266.

Further, there is no merit to respondent's argument that the trial court should have considered placement with other relatives or friends. The record shows that the trial court did consider that factor. In its order, the trial court found that no other service or arrangement, except removal, was reasonably available to adequately safeguard RDM from risk of harm. MCL 712A.13a(9)(b); MCR 3.963(B)(1)(d). The record shows that DHHS had begun its initial investigation in June 2022, and that the investigation had been completed. RDM had been placed with a relative as part of a safety plan, but that relative had informed DHHS that she could no longer provide care for RDM. Respondent immediately asserted that she was no longer in agreement with a safety plan, and demanded that RDM be returned to her custody. Respondent did not present to the trial court, and has not presented on appeal, any evidence of other relatives or friends who qualified for placement and were willing to take RDM into their home. Respondent's argument is conclusory and unsupported by facts or legal authority. See *Woods v SLG Prop Mgt, LLC*, 277 Mich App 622, 627; 750 NW2d 228 (2008); *Mallard v Hoffinger Indus, Inc*, 210 Mich App 282, 286; 533 NW2d 1 (1995), vacated in part on other grounds 451 Mich 884 (1996).

Affirmed.


/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

-4-