*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re JOHNS, Minors.

UNPUBLISHED
July 20, 2023

No. 363609
Ingham Circuit Court
Family Division
LC Nos. 20-000781-NA;
            20-000782-NA

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Respondents appeal by right the trial court's order terminating their parental rights to the minor children, under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (b)(*iii*), (c)(*i*), (c)(*ii*), and (j).  Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

In October 2020, petitioner, the Department of Health and Human Services, filed a petition seeking removal of the children from respondents' care and requesting that the court take jurisdiction over the children.  The petition alleged, in part, that respondents were suffering from undiagnosed mental-health problems, had severe drug-abuse problems, inadequately supervised the children, and permitted the children to abuse illegal substances.  Respondents entered a plea of admission to several allegations in the petition.

After accepting their plea, the court took jurisdiction over the children, and petitioner developed a case service plan.  The plan required respondents to complete psychological and substance-abuse assessments, undergo recommended substance-abuse treatments, engage in individual therapy, and participate in parenting time.  Although numerous services aimed at reunification had been offered, respondents only participated minimally in the services and they did not demonstrate any benefit from their participation in the services.  Petitioner, therefore, filed a supplemental petition seeking termination of respondents' parental rights.  Following a termination hearing, the court found that petitioner had made reasonable efforts to reunify the children with respondents.  Further, the court found by clear and convincing evidence that termination was proper under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (b)(*iii*), (c)(*i*), (c)(*ii*), and (j), and it

-1-

found by a preponderance of the evidence that termination of respondents' parental rights was in the best interests of the children.

## II. REASONABLE EFFORTS

### A. STANDARD OF REVIEW

Respondents argue that the trial court erred by finding that reasonable efforts were made to reunify the family. This Court reviews "for clear error a trial court's decision regarding reasonable efforts." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). The trial court's finding is clearly erroneous if a review of the entire record leaves this Court with a definite and firm conviction that a mistake was made. *In re McCarrick/Lamoreaux*, 307 Mich App 436, 463; 861 NW2d 303 (2014).

### B. ANALYSIS

Absent certain aggravated circumstances, "[r]easonable efforts to reunify the child and family must be made in all cases . . . ." MCL 712A.19a(2). As part of its reasonable efforts, petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). See also MCL 712A.18f(3)(b) and (c). Petitioner and the trial court must then continually ensure that a parent has "a meaningful opportunity to comply with a case service plan[.]" *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010). The respondent-parent has a duty to participate in and benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

The primary barrier to reunification in this case was respondents' substance abuse. Petitioner offered numerous services to rectify this barrier. Respondents were referred for a substance-abuse assessment: respondent-mother completed her assessment, but respondent-father did not. Respondent-mother was referred to an outpatient substance-abuse program, which she never completed. Respondents were referred for randomized drug screenings. When respondents identified barriers to their participation in the screens—such as respondent-father's health issues, the cleanliness of the testing sites, and transportation issues—petitioner accommodated them by providing bus passes and by offering drug screens in respondents' home. Respondent-mother, however, twice refused drug screens when they were offered at her home. Moreover, their overall participation in the drug-screen process was poor. Respondent-mother submitted to only 17% of the drug screens offered to her, and respondent-father submitted to only 19% of the drug screens offered to him. Respondent-mother tested positive for methamphetamines in more than half of the screens she did submit to, and respondent-father tested positive for substances on several occasions. Given the record before this Court, the trial court did not err by finding that petitioner made reasonable efforts to rectify the substance-abuse barrier and reunify the family.

Parenting ability was another barrier to reunification. Petitioner offered respondents various services to rectify this barrier as well. Respondents initially participated in an in-home parenting coach program that they had been referred to, but they eventually refused services and would not allow the coach into their home. Respondents were also offered parenting classes. Respondent-father never participated. And, although respondent-mother reported that she was

participating, she never provided any documentation showing that she participated in or completed the classes. Respondents received parenting time with the children once a week, but the children—both of whom were teenagers—eventually refused to attend because they had no interest in maintaining a relationship with respondents. Moreover, a no-contact order was issued between respondents and one of the children due to respondents' ongoing criminal cases for child abuse and assault, which also limited parenting time with that child. The evidence supports the court's finding that petitioner offered services to rectify the concerns regarding parenting skills.

Another barrier was respondents' mental-health issues. Respondents were referred for psychological assessments, which they completed. Respondents were also referred to individual therapy. Although they participated in the therapy, they did not demonstrate a substantial benefit from it. Respondent-mother was referred to domestic violence services by a caseworker, but she refused to participate because she was "not interested in those services" at that time. On this record, the court's finding that services were offered to rectify the mental-health concerns is not erroneous.

Despite the record reflecting that numerous services were provided to reunify them with the children, respondents assert that the efforts were not reasonable because family therapy had not been offered. However, a therapist for one of the children did not recommend it at that time because it would have been detrimental to the child's mental health. Moreover, the therapist stated that family counseling *would* be considered if respondent-father first participated in anger-management therapy, but respondent-father told the caseworker that he was not interested in doing so. Similarly, the child testified at the termination hearing that he did not know whether engaging in family therapy would have helped, and the child's therapist testified that, even at the time of the termination hearing, family counseling would be detrimental to the child's mental health and well-being. Given that the family therapy was not recommended by the child's therapist, and given that respondent-father was unwilling to engage in recommended anger-management therapy, the failure to provide family therapy did not render the reunification efforts unreasonable.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford