*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
November 2, 2023

*In re* FOWLER, Minors.

No. 365093
Genesee Circuit Court
Family Division
LC No. 23-138684-NA

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In this interlocutory appeal, respondent-mother appeals by right, pursuant to MCR 3.993(A)(1), the trial court's order authorizing a petition for the termination of her parental rights to her minor children, EF and DF; removing the children from her custody; and ordering that no reasonable efforts be made to preserve or reunify the family. The trial court's order was rooted in its findings of medical neglect related to EF and severe nonaccidental traumatic injuries to DF. Its findings were sufficient and supported by evidence that satisfied the requirements for removal under MCL 712A.13a(9) and MCR 3.965(C)(2). We affirm.

## I. BACKGROUND

This case arises out of the alleged medical neglect of respondent's daughter, EF, who is autistic, and severe physical abuse of respondent's infant son, DF. The case began when the children's father[1] reported to Children's Protective Services (CPS) that the children were covered in abrasions and bruises after he picked them up from respondent's home, where they had been for two months. EF also apparently told her father that respondent's boyfriend sexually assaulted her.[2] The father contacted CPS with his concerns.

---

[1] The children's father is not a respondent and is not a party to this appeal.

[2] We acknowledge that the record indicates that EF has nonverbal autism. As described below, the sexual assault allegations were unverified, in part, because EF was unable to communicate with health professionals. It is unclear how she was able to communicate the initial sexual assault

This prompted petitioner, the Michigan Department of Health and Human Services (MDHHS), to investigate the allegations. Both children submitted to medical examinations. EF's medical examination did not reveal physical evidence of sexual abuse,[3] and MDHHS's attempts to forensically interview EF were unsuccessful because she was nonverbal and unable to answer the questions. EF's medical examination revealed scratches and bruises on her side, which the CPS investigator later described as not significant findings. DF's medical examination, however, revealed evidence of nonaccidental traumatic injuries, including multiple abrasions and bruises on his head, torso, and back, dried blood in his nose, two broken legs, and abnormally high potassium and lipase levels. The hospital admitted EF for his critical potassium levels, which may have been related to bruising on his stomach near the area of his liver.

During her investigation, the MDHHS caseworker confirmed with the doctors that DF's injuries were the result of nonaccidental trauma. The injuries indicated that somebody had picked him up by his legs and repeatedly shook him. When asked to explain the injuries, respondent admitted that she often picked the children up by their feet and shook them to play with them. But when the caseworker inquired into whether DF's injuries could have been a result of respondent playing with him, the examining doctor reported that his injuries "could not have occurred that way" and that the shaking "would have been more forcib[le]." The doctors also reported that, given the extent of DF's injuries and the fact that the children had been in respondent's care for two months without seeing their father, it was highly unlikely that the injuries occurred while the children were in their father's care.

The caseworker also described respondent's neglect of EF's therapy related to her autism. The caseworker confirmed with EF's therapist that EF had been consistently attending her therapy appointments to manage her nonverbal autism while she was in her father's care. But EF had missed 13 of her 16 scheduled appointments while she was in respondent's care.

DHHS filed a petition in which it requested that the trial court take jurisdiction over the children under MCL 712A.2(b)(1) (child subjected to substantial risk of harm) and (2) (unfit home environment). DHHS also sought removal of the children from respondent's custody and termination of her parental rights at the initial disposition.

At the preliminary hearing before the trial court referee, the caseworker testified regarding her investigation and the allegations in the petition, and the trial court authorized the petition and granted the requested relief. The trial court referee stated her findings on the record and later entered a recommendation incorporating and amplifying those findings, which the trial court judge approved. On the record, the trial court found that it was contrary to the children's welfare to remain in respondent's custody due to medical neglect of EF and severe physical abuse of DF. The trial court found that, under the circumstances, MDHHS had made reasonable efforts to

allegation to her father. Respondent did not raise the issue with this inconsistency below, and it is not a central issue to this appeal.

[3] Doctors performed an external examination for indicators of sexual abuse. Because they did not identify external indicators, they did not perform any further physical examination for sexual abuse, viewing further examination as unnecessary.

prevent removal from respondent's home by investigating the allegations, consulting with medical staff, and monitoring the children. But it found that reasonable efforts shall not be made to preserve and reunify the family because it would be detrimental to the children's health and safety. The court concluded that respondent's custody presented a substantial risk of harm to their lives, physical health, and mental wellbeing. The trial court also found that no service or other arrangement was reasonably available to adequately safeguard the children from the risk of harm, and that the children's placement with their father would protect them from risk of harm. The court authorized the petition, removed the children from respondent's custody, placed the children with their father, and ordered that no reasonable efforts be made by MDHHS to preserve or reunify the family. The court relied on its probable cause finding of "severe physical abuse" of DF, an infant, and medical neglect of EF. Following the hearing, the trial court entered an order on a SCAO Form JC 11a. The written order, like the court's findings on the record, made specific findings as to each factor for removal under MCL 712A.13a(9) and MCR 3.965(C). This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews the factual findings underlying a legal issue for clear error, and a finding is clearly erroneous if a review of the record leaves this Court with a firm and definite conviction that a mistake was made. *In re McCarrick/Lamoreaux*, 307 Mich App 436, 463; 861 NW2d 303 (2014). "Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

## III. AUTHORIZING PETITION FOR TERMINATION OF PARENTAL RIGHTS

At the threshold, respondent appears to first argue that the trial court erred by authorizing the petition. We disagree.

When MDHHS petitions the court to take jurisdiction in a child protection matter, "the trial court must hold a preliminary hearing and may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). See also MCR 3.965(B)(12). MCL 712A.2 provides in relevant part:

> The court has the following authority and jurisdiction:
>
> * * *
>
> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).

The trial court did not clearly err by finding that there was probable cause to believe that the children were subjected to a substantial risk of harm in respondent's custody and that respondent's home was an unfit environment. MCL 712A.2(b)(1) and (2), therefore, provided a basis for authorization of the petition. Here, the caseworker testified that she confirmed with EF's therapist that EF had missed 13 of her 16 scheduled appointments while she was in respondent's care. The caseworker also confirmed with doctors that DF's injuries, which included a bloody nose, bruising and abrasions to his torso and back, and two broken legs, were a result of nonaccidental trauma and consistent with somebody picking up DF by his feet and repeatedly and violently shaking him. Accordingly, the trial court did not clearly err by finding probable cause to believe that respondent engaged in conduct falling within MCL 712A.2(b)(1) and (2).

## IV. REMOVAL FROM CUSTODY FOLLOWING PRELIMINARY EXAMINATION

Respondent also argues that the trial court erred by removing the children from her custody following the preliminary hearing. She argues that the trial court made inadequate or incorrect findings necessary to order removal under MCR 3.965(C) and MCL 712.13a(9). We disagree.

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted). MCR 3.965(C) provides, in relevant part:

(2) *Criteria*. The court may order placement of the child into foster care if the court finds all of the following:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C). See also 712.13a(9).[4]]

To order removal of the minor child, the trial court "must make explicit findings that it is contrary to the welfare of the child to remain at home, MCR 3.965(C)(3), and reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required, MCR 3.965(C)(4)." *Benavides*, 334 Mich App at 168 (quotation marks omitted). "The 'preponderance of the evidence' standard applies to cases where the court is merely assuming jurisdiction over the child and not terminating the parent's rights in that child." *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020) (quotation marks and citation omitted).

The trial court made adequate findings supported by the record regarding each of the five factors in MCR 3.965(C)(2). As discussed above, the trial court concluded that respondent's medical neglect of EF and severe physical abuse of DF created a substantial risk of harm to the children. See MCR 3.965(C)(2)(a). The allegations in the petition also provide a sufficient factual basis to establish that remaining in respondent's custody would be contrary to the children's welfare. See MCR 3.965(C)(2)(c); MCR 3.965(C)(3). This case is based on the medical neglect of EF and severe physical abuse of DF, a six-month-old, so separation from respondent was the only provision reasonably available to alleviate the risk of harm to the children. See MCR 3.965(C)(2)(b). The trial court relied in part on DF's infancy to support this finding. Because of the severity of the allegations, the medical examinations and the investigation constituted reasonable efforts to avoid removal. See MCR 3.965(C)(2)(d); MCR 3.965(C)(4). Finally, because the children were placed with their father and because no allegations have been raised against the children's father, the conditions were adequate to safeguard the children. MCR 3.965(C)(2)(e). The trial court's findings were adequate and rooted in evidence sufficient to satisfy the requirements of MCR 3.965(C)(2) and MCL 712A.13a(9).

## V. REASONABLE EFFORTS

Lastly, respondent argues that the trial court erred by ordering that no reasonable efforts be made to preserve or reunify the family. We disagree.

MDHHS is obligated to make reasonable efforts to reunify the family in *all* cases except those cases involving an aggravated circumstance listed in MCL 712A.19a(2). *In re Simonetta*, 340 Mich App 700, 705-706; 987 NW2d 919 (2022). "Under MCL 712A.19a(2)(a), there must be a judicial determination that the parent has subjected the child to aggravated circumstances before [MDHHS] is excused from making reasonable efforts." *In re Smith-Taylor*, 509 Mich 935 (2022) (quotation marks omitted).[5] Aggravated circumstances are defined in MCL 722.638

---

[4] The substance of MCR 3.965(C)(2) and MCL 712A.13a(9) is identical. *In re Benavides*, 334 Mich App at 168 n 2.

[5] A Supreme Court order is binding on this Court "if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 859, 371; 817 NW2d 504 (2012). The Supreme

and include a parent's "[b]attering, torture, or other serious physical harm" of a child or a child's sibling. MCL 722.638(1)(a)(*iii*). The trial court must articulate its "factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." *Simonetta*, 340 Mich App at 706 (quotation marks and citation omitted).

The trial court did not clearly err by finding that no reasonable efforts to preserve or reunify the family would be made because it was detrimental to the children's health and safety. MDHHS alleged that respondent had seriously physically harmed DF by picking him up by his feet and violently shaking him repeatedly, and such allegations constitute an aggravated circumstance pursuant to MCL 712A.19a(2)(a). See MCL 712A.19a(2)(a); MCL 722.638(1)(a)(*iii*). The caseworker testified that doctors confirmed that DF's significant injuries were the result of "nonaccidental abuse" that occurred while in respondent's care. Respondent claimed that she picks the children up by their feet and shakes them to play with them, but the doctors reported that DF's injuries "could not have occurred in that way" and were the result of his being picked up and shaken much more violently. The results of each child's medical examination and reports from the caseworker's investigation were included in MDHHS's petition, which provided specific detail regarding the nature of the children's injuries. A parent's severe physical abuse of a child places that child and that child's sibling at substantial risk of harm if they were to remain in that parent's care or be placed back into that parent's care. See *Benavides*, 334 Mich App at 169 (finding no clear error in the trial court's adoption of a referee's finding that the respondent father's physical abuse placed the two children at "an extreme risk of harm" if the children remained in his care). MDHHS also alleged that respondent failed to regularly take EF to therapy for her autism. The CPS investigator testified that although EF consistently attended therapy to manage her nonverbal autism while in her father's care, respondent had failed to take EF to 13 of her last 16 therapy sessions. The trial court found it was contrary to the children's welfare to remain in respondent's care due to her "severe physical abuse of [DF]" and "medical neglect" of EF. Given the severity of the allegations, it was not unreasonable for the trial court to find that MDHHS was not obligated to make reasonable efforts to preserve or reunify the family. See *Smith-Taylor*, 509 Mich at 935; *Simonetta*, 340 Mich App at 705-706. We acknowledge that the trial court did not use the phrase "aggravated circumstances" on the record, but it provided that conclusion in its written order, and its findings on the record were sufficient to support that conclusion.

We affirm.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado

Court's order in *In re Smith-Taylor*, 509 Mich 935, satisfies these requirements and is, therefore, binding on this Court.