*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EDWARDS, Minors.

UNPUBLISHED
May 30, 2024

No. 367339
Wayne Circuit Court
Family Division
LC No. 2015-520453-NA

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the order removing the minor children, KLE and LPE, from her care after a preliminary hearing. On appeal, respondent argues (1) the trial court erred in determining there was sufficient evidence demonstrating removal was necessary, and (2) the trial court erred when it did not consider all of the conditions of removal under MCL 3.965(C)(2). We affirm.

## I. BACKGROUND

This matter involves the removal of KLE and LPE (ages 3 and 2, respectively) from respondent's care. In July 2023, petitioner, the Department of Health and Human Services (DHHS), filed a petition alleging respondent neglected KLE and LPE, resulting in their physical injury, had an unfit home, struggled with ongoing mental health issues, and had several prior terminations.

The referee held a preliminary hearing and respondent was present via Zoom. Child Protective Services (CPS) specialist Bradley Murphy (Murphy) stated respondent had untreated and unstable mental health issues. Her improper supervision of the children resulted in serious, second-degree burns to both children on June 24, 2023, which, although accidental, were concerning. Respondent had a number of prior terminations[1] and her home was unsuitable, full of

---

[1] Respondent voluntarily released her parental rights to her oldest daughter DFPD in November 2017; DFPD had Down's Syndrome and was medically fragile. Respondent had three other children but her parental rights to those children were terminated after receiving extensive services

clutter, and the children lacked beds; respondent stated that the three of them slept together on an inflatable mattress. The testimony revealed that the young children were at risk in respondent's care, as evidenced by their blistering burn injuries,[2] multiple healing abrasions found on LPE's upper back and upper chest, and concerns that the children were nonverbal. Reasonable efforts were made over the history of respondent's multiple CPS cases[3] to maintain the children in respondent's care, but the counseling and medications proved unsuccessful in reunifying respondent with her other children. But after the burn accident, and the children's temporary placement outside the home pursuant to a temporary voluntary agreement (TVA)[4] that respondent ended after only a few days, Murphy testified that respondent's immaturity, lack of understanding, and lack of appropriate supervision supported DHHS's request for termination at the original adjudication and a permanency plan of adoption.

Based on this testimony, the referee found that the children were at a substantial risk of harm. At the conclusion of the preliminary hearing, the referee made the following brief findings:

> Based upon the testimony presented, I am going to recommend to a judge of the court [that] the children be removed from the care of [respondent] and placed in the care of [DHHS].

> The testimony supports [DHHS's] claim that the children are at risk in [respondent's] care, as evidenced by the injuries they suffered when they were last in her care.

> I'm going to find also that the testimony supports that reasonable efforts were made to try to maintain the children in [respondent's] care. Those efforts were unsuccessful.

---

as she failed to comply with the court-ordered case service plan to address her mental health, housing, parenting and cognitive impairments. Respondent appealed these prior terminations: first, in *In re Pigram-Davison/Edwards*, *Minors*, unpublished per curiam opinion of the Court of Appeals, issued December 13, 2018 (Docket No. 343914), and then in *In re K L Washington*, *Minor*, unpublished per curiam opinion of the Court of Appeals, issued August 15, 2019 (Docket No. 347531). This Court affirmed the terminations in both appeals. Notably, both decisions were issued after *In re Hicks/Brown*, 500 Mich 79, 87-90; 893 NW2d 637 (2017).

[2] The children were hospitalized for a few days to treat the burns.

[3] According to the testimony, starting in 2014, respondent was offered preventative services to address domestic violence, mental health support, cognitive delays through the Neighborhood Services Organization Supporting Parents Individual Needs program, suitable housing, employment, infant mental health, parenting, and individual counseling.

[4] Murphy testified that the licensed foster care parents who had these children pursuant to the TVA also had two of respondent's biological children that were previously removed from respondent.

In addition to that, because [respondent] has had prior her rights to other children terminated previously by this court, that is a basis to find that reasonable efforts are not necessary.

[DHHS] is—I'll recommend to a judge of the court that parenting time for [respondent] be supervised at this point at the agency only.

[DHHS] is asking that these children be made Permanent Court Wards at the initial disposition and the permanent plan is adoption. Based upon the allegations made in this petition, I'll find that will be an appropriate permanent plan. [DHHS's] effort to achieve that plan is the filing of this petition.

The referee held it was contrary to the children's welfare for them to remain in respondent's care; accordingly, the referee authorized the petition, and ordered the children be removed and placed in foster care. This appeal followed.

## II. INSUFFICIENT EVIDENCE

Respondent argues the trial court erred in deciding that the children's removal was necessary for their safety and well-being. Further, respondent argues the trial court erred when it found sufficient evidence to make this determination under MCL 712A.13a(9) and MCR 3.965(C). We disagree.

## A. STANDARD OF REVIEW

A trial court's factual findings are reviewed for clear error. *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 191; 848 NW2d 107 (2014). "This Court will reverse a trial court's finding of fact only if this Court is left with a definite and firm conviction that a mistake has been made." *In re Diehl*, 329 Mich App 671, 687; 944 NW2d 180 (2019) (quotation marks and citation omitted). This Court defers to the trial court's credibility determinations and its weighing of evidence. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). This Court reviews de novo the application of statutes and court rules. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

## B. ANALYSIS

"The preponderance of the evidence standard applies to cases where the court is merely assuming jurisdiction over the child and not terminating the parent's rights in that child." *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020) (quotation marks and citation omitted). "The trial court may combine the removal hearing with the preliminary hearing." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448; 861 NW2d 303 (2014). "At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *Id*. (quotation marks and citation omitted).

A child may only be placed in foster care if the trial court finds all of the following conditions:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2); see also MCL 712A.13a(9)[5].]

If the trial court orders placement in foster care, it "must make a statement of findings, in writing or on the record, explicitly including the finding that it is contrary to the welfare of the child[ren] to remain at home and the reasons supporting that finding." MCR 3.965(C)(3). Further, "the court must determine whether reasonable efforts to prevent the removal of the child[ren] have been made or that reasonable efforts to prevent removal are not required." MCR 3.965(C)(4). See also *In re McCarrick/Lamoreaux*, 307 Mich App at 449.

The record clearly establishes there was a substantial risk of harm for the children to remain in respondent's home. Murphy testified respondent had untreated and unstable mental health issues. Her improper supervision of the children resulted in serious, second-degree burns on KLE's leg and LPE's forehead and scalp; respondent reported she was frying food for them at 11 pm and spilled the pan when KLE threw his iPad at her because the battery died. Respondent also had two involuntary prior terminations involving three children, the last being in 2018. Additionally, her home was unsuitable because it was full of clutter and the children lacked beds. Respondent was offered assistance regarding the home's current safety hazards and declined assistance, but the safety concerns were not addressed a month later. Respondent denied having mental health issues despite a prior psychological evaluation revealing that she struggled with anxiety, major depressive disorder, ADHD, panic disorder, and mild intellectual disorder as well as a prior diagnosis of bipolar disorder. Respondent was prescribed Zoloft but was not taking any medication to address her emotional stability issues. Clearly, a preponderance of the evidence supported the trial court's finding removal was warranted due to the substantial risk of harm the children faced in respondent's home. See *In re Williams*, 333 Mich App at 183. The trial court's findings, while conclusory, were not clearly erroneous in light of the evidence, and do not leave "a definite and firm conviction that a mistake has been made." *In re Diehl*, 329 Mich App at 687.

## II. CONDITIONS OF REMOVAL

---

[5] The court rule and statute are substantively identical.

Next, respondent argues the trial court failed to establish all the grounds for pretrial removal under MCL 712A.13a(9), and MCR 3.965(C)(2). We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo the application of statutes and court rules. *In re Ferranti*, 504 Mich at 14. A trial court's factual findings are reviewed for clear error. *In re COH, ERH, JRG, & KBH*, 495 Mich at 191. "This Court will reverse a trial court's finding of fact only if this Court is left with a definite and firm conviction that a mistake has been made." *In re Diehl*, 329 Mich App at 687.

## B. ANALYSIS

If the trial court orders children's placement in foster care, it "must make a statement of findings, in writing or on the record, explicitly including the finding that it is contrary to the welfare of the child[ren] to remain at home and the reasons supporting that finding." MCR 3.965(C)(3). Further, "the court must determine whether reasonable efforts to prevent the removal of the child[ren] have been made or that reasonable efforts to prevent removal are not required." MCR 3.965(C)(4). See also *In re McCarrick/Lamoreaux*, 307 Mich App at 449. "A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail." *In re Williams*, 333 Mich App at 183; see also MCR 2.517(A)(2). "However, when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*., citing *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW3d 262 (2007). Here, the referee properly made factual findings for each factor enumerated in MCR 3.965(C)(2) and, consequently, MCL 712A.13a(9).

Factor (a) considers whether custody of the children with respondent presents a substantial risk of harm to the children's life, physical health, or mental well-being. MCR 3.965(C)(2)(a). At the preliminary hearing, the referee stated: "The testimony supports [DHHS's] claim that the children are at risk in [respondent's] care, as evidenced by the injuries they suffered when they were last in her care." The referee "explicitly includ[ed] the finding that it is contrary to the welfare of the child[ren] to remain at home and the reasons supporting that finding." MCR 3.965(C)(3). Although the trial court did not explicitly state that this finding satisfied factor (a), it used similar language from factor (a), and explained how its factual findings supported its conclusion that the children were at risk of harm if they remained with respondent. Therefore, MCR 3.965(C)(2)(a) is satisfied.

Factor (b) considers whether no provision or service except for removal is reasonably available to adequately safeguard the children. MCR 3.965(C)(2)(b). The referee properly considered this factor. At the preliminary hearing, the referee stated that because respondent's parental rights "to other children [were] terminated previously by this court, [these terminations] [are] a basis to find reasonable efforts are not necessary." As a result, it determined no provision of service or other arrangement, other than removal was available, to safeguard the children under MCR 3.965(C)(2)(b). Indeed, respondent had been offered services from 2015 through 2019 and lost her parental rights to four children during that time. Based on the testimony at the preliminary hearing, the referee heard that these young children were unable to talk and had other healing

injuries in addition to the second-degree burns when considering how to proceed. The referee was also required to find "reasonable efforts to prevent removal have been made or that reasonable efforts to prevent removal are not required[]" under MCR 3.965(C)(4) and MCR 3.965(C)(2)(d). Because the referee stated, "reasonable efforts were made to try and maintain the children in [respondent's] care. Those efforts were unsuccessful[,]" MCR 3.965(C)(2)(b) was satisfied.

Factor (c) relates to whether the children's continuing residence in the home is contrary to their welfare. MCR 3.965(C)(2)(c). The referee gave its reasoning supporting this factor in its order, stating:

> The children are at risk in the care of mother as the childen [sic], ages. [sic] 2 and 3 yrs [sic] old, suffered second degree grease burns while in the care of [respondent]. [Respondent] has unaddressed mental health issues possibly complicated by intellectual deficits which impair her ability to properly parent. In addition, [respondent's] housing was unfit due to clutter and lack of furnishings.

As a result, the trial court properly and explicitly considered MCR 3.965(C)(2)(c).

Factor (d) considers whether, consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal. MCR 3.965(C)(2)(d). The referee considered this factor, stating such reasonable efforts included: "[a] Safety Plan was implemented until it was revoked by [respondent] when she took the children from the plan, Prior [sic] services included housing and mental health services."

Factor (e) relates to whether conditions of the children's custody away from respondent are adequate to safeguard the children's welfare. MCR 3.965(C)(2)(e). The referee stated: "[DHHS] is asking that these children be made Permanent Court wards at the initial disposition and the permanent plan is adoption. Based upon the allegations made in this petition, I'll find that will be an appropriate permanent plan." In other words, the trial court found sufficient evidence to justify removal, and for the permanency plan to be adoption. This suggests removal is adequate to safeguard the children's welfare, satisfying MCR 3.965(C)(2)(e).

The Legislature "explicitly requir[ed] that the trial court find *all* the factors prior to removing a child from a parent's care." *In re Williams*, 333 Mich App at 184 (emphasis added). "Although *not* removing a child from an unfit parent can also be hazardous to the child's health, it is well recognized as public policy that separation of children from parents should be avoided if reasonably feasible." *Id*. (emphasis in original). While *Williams* "clearly recognized the gravity of any temporary placement in foster care" as the basis for requiring courts to explicitly consider all the factors set forth in MCR 3.956(C)(2) and MCL 712A.13a(9), we believe that the referee here made a minimally sufficient record for this Court to conduct a meaningful review. *Williams*, 333 Mich App at 636. Accordingly, there was sufficient evidence on the record to warrant removal, and the trial court made sufficient factual findings for each factor enumerated in MCR 3.965(C)(2).

## IV.  CONCLUSIONS

For the reasons discussed above we affirm.

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick