*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CARLISLE/CHASE/HUNTER/JONES, Minors

UNPUBLISHED
June 6, 2024

No. 368318
Wayne Circuit Court
Family Division
LC No. 2015-518727-NA

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's September 13, 2023 order after the preliminary hearing. The order continued the trial court's August 29, 2023 order, which removed mother's six children from her care. We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of KC, KCC, DC, TH, TJ, and TLJ. TGH is the biological father of TJ, TLJ, and TH and was a respondent in the petition. DMC is the biological father of KC and KCC and was also a respondent in the petition. DRC is the biological father of DC and was not a respondent in the petition.

The trial court first acquired jurisdiction over TJ, TLJ, and TH (the only children respondent had at that time) after the Department of Health and Human Services (DHHS) filed a petition for temporary wardship in 2015. The petition alleged that respondent, TJ, TLJ, and TH were residing in a home without any legal right or permission to reside in the home, the home was without working electricity or a working furnace, respondent was provided services to rectify the unsuitable living conditions but failed to do so, and two previous Child Protective Services (CPS) investigations substantiated physical abuse allegations against respondent. The trial court found reasonable cause to believe that the immediate removal of TJ, TLJ, and TH from respondent's care was necessary to protect the children's safety and welfare. Respondent was ordered to complete parenting classes, individual therapy, and a psychological evaluation, and to obtain and maintain suitable housing and income. Respondent completed the services and the trial court returned TJ, TLJ, and TH to respondent's care and terminated the court's jurisdiction in January 2016.

In August 2023, petitioner filed a petition for child protective proceedings requesting that the trial court take jurisdiction over TJ, TLJ, TH, KC, KCC, and DC under MCL 712A.2(b)(1) and (2). The petition alleged, among other things, that CPS had received a referral of improper supervision but respondent refused to allow CPS to enter her home to assess its suitability for the children. CPS observed the children to be dirty and unkempt. Respondent was neglecting TH's mental health needs by failing to ensure he received his necessary medications. The petition alleged that on May 30, 2023, respondent called police and asked them "to take [TH] before she kills him, or he kills her." When police arrived, respondent "was holding a knife and threatened to stab [TH] if he came close to her." The responding officers noted the home was "filthy" and saw a young child running through the home naked. Two days later, police were again summoned to the home. TH refused to go inside out of fear of being physically abused by respondent. TH also reported that respondent deprived him of food. Further, respondent's home lacked working electricity, petitioner attempted to provide services to respondent but respondent was uncooperative, and respondent failed to benefit from prior services.

Following a preliminary hearing, the trial court found that petitioner made reasonable efforts to prevent the removal of respondent's children from her care and that it was contrary to the welfare of the children to remain in respondent's care. The trial court ordered the removal of the children from respondent's care and placed the children in the care of the DHHS, except DC, who was placed with his nonrespondent father. Respondent now appeals.[1]

## II. ANALYSIS

Respondent argues that the trial court clearly erred by determining that petitioner presented sufficient evidence to support the removal of respondent's children from her care under MCR 3.965(C)(2) and (3) and MCL 712A.13a(9). Respondent further argues the court clearly erred by removing the children from her care because the trial court failed to make the required factual findings to order removal of the children under those provisions. We disagree.

When a trial court orders the removal of a child from a parent's care and places the child in foster care, the trial court "must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *In re Benavides*, 334 Mich App 162, 168; 964 NW2d 108 (2020). This Court reviews a trial court's factual findings for clear error. *Id*. at 167. A trial court's finding "is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "This Court reviews de novo questions

---

[1] On appeal, appellees argue that this Court lacks jurisdiction over the instant appeal. The latest removal order was entered on September 13, 2023. Per the Claim of Appeal and the register of actions, appointed counsel was requested on September 22, 2023. The claim of appeal was filed on October 23, 2023. Under these circumstances, even though the claim of appeal was not filed until October 23, 2023 (40 days after the removal order), because appointed counsel was requested within 21 days of the date of removal, this Court treats the claim as timely filed.

of law, including the interpretation and application of our court rules." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 445; 861 NW2d 303 (2014).

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App at 167 (quotation marks and citation omitted). A trial court may also adjourn the preliminary hearing for the purpose of securing the appearance of a parent, MCR 3.965(B)(1).[2] When a trial court adjourns a preliminary hearing without deciding whether to authorize the petition, "the court may make temporary orders for the placement of the child when necessary to assure the immediate safety of the child, pending the completion of the preliminary hearing and subject to [MCR 3.965(C)] . . . ." MCR 3.965(B)(11).

Both MCR 3.965(C)(2) and MCL 712A.13a(9)[3] provide for the placement of children in foster care as follows:

> The court may order placement of the child into foster care if the court finds all of the following:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [*In re Williams*, 333 Mich App 172, 182-183; 958 NW2d 629 (2020), quoting MCR 3.965(C)(2).]

When the court is "merely assuming jurisdiction over the child and not terminating the parent's rights in that child," the evidentiary standard applicable to the trial court's findings under MCR 3.965(C)(2) and MCL 712A.13a(9) is a preponderance of the evidence. *In re Williams*, 333 Mich App at 183 (quotation marks and citation omitted). A trial court "must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review," but

---

[2] The trial court did so in this case to secure the presence of DMC.

[3] "MCR 3.965(C)(2) is identical in substance to MCL 712A.13a(9)." *In re Benavides*, 334 Mich App at 168 n 2.

the trial court "is generally not obligated to articulate extensive findings regarding every conceivable detail." *Id.*

At the preliminary hearing, CPS Investigator Chasity McKnuckle testified that respondent had multiple encounters with law enforcement in which respondent threatened to stab and kill TH, who was then only nine years old and had ADHD and a behavior disorder, and reported that she hit TH with sticks and other objects in the house. McKnuckle further testified respondent's home was unsuitable for the children because it lacked running water, a working furnace and working electricity, and when McKnuckle observed the children, they appeared unclean, and their clothes were dirty. According to McKnuckle, respondent refused to allow McKnuckle to enter the home to assess its suitability for the children, but law enforcement also observed respondent's home and reported that it was not suitable or livable. McKnuckle testified that respondent reported that she did not have any food in her home for the children and respondent also asked her for beds. McKnuckle also testified that they had two team meetings, but respondent became irate at the second meeting, as she often did with McKuckle, yelling and swearing, and the meeting had to be discontinued.

Respondent denied the allegations that her home had no electricity or running water, but admitted that at times, she did not have sufficient food in the house for the children. When asked why she would not allow CPS in her home to perform an assessment, respondent had no response except that she would have sent pictures. The trial court explained that if respondent wanted to allow a CPS worker, DHHS worker, or police officer into her home to show that her home was suitable, she was welcome to do that as soon as the next day, and the court would get the report.

With respect to MCR 3.965(C)(2)(a), the trial court found that an order removing the children from respondent's care was necessary because the children were at a substantial risk of harm or were in surroundings that presented an imminent risk of harm and the children's immediate removal from those surroundings was necessary to protect the children's health and safety. With respect to (C)(2)(b), the trial court found that no provision of service or other arrangement except removal of the children was reasonably available to adequately safeguard the children from the risk of harm to the children's lives, physical health, or mental well-being. The trial court's findings were supported by McKnuckle's and respondent's testimony that there was not enough food in the house for the children, and by McKnuckle's testimony that respondent's home lacked running water and electricity and respondent refused to allow McKnuckle to enter the home to assess its suitability for the children. The trial court's findings also have support in that respondent's children were removed from her care in 2015 because the family home was unsuitable for the children and respondent received services in the course of that proceeding, but respondent failed to benefit from the services provided because the instant petition was necessitated, in part, by the same circumstances giving rise to the 2015 removal, and the testimony that petitioner attempted to establish a service plan for respondent in this instance but was unable to do so because respondent became irate and uncooperative.

With respect to (C)(2)(c), the trial court found that it was contrary to the children's welfare to remain in respondent's home. This was supported by McKnuckle's testimony that respondent required assistance to obtain beds for the children but refused to allow McKnuckle to complete a home assessment so that beds could be ordered, and that respondent's home lacked running water and working electricity. McKnuckle's testimony that she observed the children to be unclean and

their clothes were dirty and her testimony (and respondent's) that respondent reported that she did not have food in the home for the children also supports the trial court's findings. Further, the trial court noted the evidence demonstrated that respondent was physically and verbally abusive to TH, including threatening to stab and kill TH. Though respondent argues that this evidence demonstrates only that respondent was unable to care for TH, this Court has repeatedly recognized that "how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Accord *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014). Thus, respondent's physical and verbal abuse of TH was probative of how respondent may treat her other children, and the trial court could properly infer from the evidence of respondent's abuse of TH that it was contrary to the welfare of all of the children to remain in respondent's care.

With respect to (C)(2)(d), the trial court found that reasonable efforts were made to prevent or eliminate removal of the children from respondent's home. McKnuckle testified that multiple team meetings were held for the purpose of providing respondent with services to prevent removal but respondent ended one team meeting early due to a minor car accident and was irate and uncooperative during the second team meeting. McKnuckle also delivered groceries to respondent's home when respondent reported that she lacked adequate food for the children, and it appeared that respondent's home lacked running water and electricity but respondent refused to allow McKnuckle to enter the home to assess its suitability for the children. Further, respondent required assistance obtaining beds for the children but refused to allow McKnuckle to assess her home despite McKnuckle advising respondent that a home assessment was required before McKnuckle could order beds for the children. Though respondent argues that reasonable efforts were not made to prevent removal, the record evidence supports the trial court's determination that petitioner made reasonable efforts to prevent the removal of the children, including attempts to establish a service plan and assess respondent's home, but respondent refused to cooperate with CPS and the DHHS.

Finally, with respect to (C)(2)(e), the trial court found that the conditions of the children's placements outside of respondent's home were adequate to safeguard the children's health and welfare. McKnuckle testified that KC and KKC were placed with their paternal uncle, TH was placed at Harbor Oaks Hospital, DC would be placed with DRC, and the DHHS was locating placement for TJ and TLJ. The trial court ordered respondent's children to be placed in the care of the DHHS, except DC, who was placed in the care of his nonrespondent father, DRC. The trial court further ordered that the DHHS conduct a home study on any relatives with whom the children were placed. No testimony was presented demonstrating that the children's placements were inadequate to protect the children's health and welfare, nor does respondent argue on appeal that the children's respective placements were inadequate. The evidence presented at the preliminary hearing was sufficient to support the removal of the children from respondent's care under MCR 3.965(C)(2) and MCL 712A.13a(9). Thus, the trial court made the requisite factual findings to

order removal of the children under MCL 712A.13a(9) and MCR 3.965(C)(2) and did not clearly err by ordering the removal of respondent's children from her care.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford