*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. STRICKLAND-MILLER, Minor.

UNPUBLISHED
February 18, 2025
10:01 AM

No. 372041
Kent Circuit Court
Family Division
LC No. 21-050441-NA

Before: SWARTZLE, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Respondent-father appeals the trial court's orders authorizing two petitions. Because the trial court did not abuse its discretion in authorizing a petition under MCL 712A.2(b)(1) but did abuse its discretion with respect to (2), we affirm in part and reverse in part.

## I. BACKGROUND

TS has been placed with fictive kin for nearly four years—the entirety of his life. This matter has already been the subject of two appeals to this Court, and this Court has summarized the pertinent facts as follows:

> Immediately after TS was born in March 2021, the Department of Health and Human Services (DHHS) petitioned the trial court to remove him from the care of his mother, who was previously investigated regarding the death of her first child. At the mother's request, the trial court ordered that TS be placed with the mother's godmother. At the time of TS's removal from the mother's care, the mother named another man as TS's putative father; however, the trial court declared respondent-father TS's legal father in May 2022, following a paternity test. Soon thereafter, respondent-father was incarcerated.

> In May 2022, the DHHS filed a supplemental removal petition with the trial court as to respondent-father. The petition noted that TS was already in placement with "fictive kin" and sought jurisdiction over TS with respect to respondent-father under MCL 712A.2(b)(1). After the trial court determined that the statutory ground

-1-

was met by a preponderance of the evidence, it exercised jurisdiction over TS, and respondent-father appealed to this Court. *In re Strickland-Miller*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket No. 362593) [*Strickland-Miller I*)], p 1. This Court reversed the trial court's order exercising jurisdiction because TS was already placed in an appropriate fictive-kin placement and the DHHS failed to investigate the names of relatives provided by respondent-father to care for TS while he was incarcerated. *Id*. at 1-4.

In May 2023, the DHHS filed another supplemental removal petition with the trial court as to respondent-father. The petition sought jurisdiction over TS with respect to respondent-father under MCL 712A.2(b)(1) and MCL 712A.2(b)(2). The petition noted that respondent-father was on probation and had an active warrant for his failure to comply with his probation requirements. The petition also alleged that respondent-father lacked appropriate housing for TS and that respondent-father failed to identify any appropriate or willing relatives or fictive kin to provide care, custody, or support to TS. At the adjudication hearing, respondent-father challenged this allegation, arguing that he provided names of four family members and one fictive kin who were willing and able to provide proper care for TS. A foster-care supervisor testified that the agency's relative-engagement specialist was informed by the four relatives that they were unwilling to care for TS and that the fictive kin was unresponsive to requests to engage in the assessment process. Ultimately, the trial court concluded that the allegations in the petition were proven by a preponderance of the evidence, and it assumed jurisdiction. [*In re Strickland-Miller*, unpublished per curiam opinion of the Court of Appeals, issued February 29, 2024 (Docket No. 367658) (*Strickland-Miller II*), pp 1-2.]

Respondent-father appealed the statutory grounds for jurisdiction, and this Court reversed the trial court for a second time. *Id*. at 2. In that appeal, the DHHS conceded that the trial court erred by finding jurisdiction under MCL 712A.2(b)(2) because, although there were allegations about respondent-father's criminal history, there were no allegations that the home in which TS lived, the fictive-kin placement, was unfit. *Id*. at 3. As to MCL 712A.2(b)(1), this Court explained that a parent may provide proper care and custody through placement with an appropriate relative, and TS was doing well in his placement while respondent-father was incarcerated. *Id*. at 3-4. This Court further held that the trial court erred by finding that respondent-father's criminal history and cannabis and alcohol use posed a significant risk of harm to TS's mental well-being to support jurisdiction. *Id*. at 5.

In June 2024, the DHHS filed another petition, seeking jurisdiction over TS under MCL 712A.2(b)(1) and (2). The petition, filed the day before respondent-father was to be released from jail, alleged that respondent-father had a history of criminal offenses, including first-degree criminal sexual conduct in 2009, and had assaulted another inmate in February 2024. Respondent-father was also not in compliance with his sex-offender registration. Respondent-father had identified his two brothers as individuals who would assist in caring for TS, but both brothers also had criminal histories. Respondent-father planned to move in with one brother, and the DHHS has not been able to assess the home. Petitioner further alleged that respondent-father had stated

during a recorded jail call that, once he had custody of TS, and the case was closed, he would let TS's mother care for him, although her parental rights had been terminated.

After a hearing, in which the caseworker testified that respondent-father had not seen TS in-person in "well over a year," the referee authorized the petition, finding that there was probable cause that one or more of allegations were true and supported jurisdiction under MCL 712A.2. The referee noted, "I can look at the mental wellbeing piece that this child really has no relationship with [respondent-father] and has had his entire life with this fictive kin placement." The referee found that "ripping" TS from that placement to live with respondent-father posed a substantial risk of harm to TS's mental well-being and potentially his physical health.

Three weeks later, the DHHS filed a second, amended petition, largely repetitive of the earlier petition, but, in addition, alleged that the DHHS had visited respondent-father's one-bedroom home that he shared with his brother, and that there were safety concerns due to a sunken floor in the bedroom. Further, respondent-father had tested positive for cocaine and THC, missed parenting-time visits, and he not found a job despite reporting an employment plan for after his release.

The record involving the amended petition is not particularly clear, at least in terms of appellate review. At the hearing on the amended petition, the referee stated that petitioner was pursuing jurisdiction under both MCL 712A.2(b)(1) and (2); and yet, on the petition itself, the box for MCL 712A.2(b)(1) has been whited out, and the box for MCL 712A.2(b)(2) is checked. The referee did ask the caseworker how MCL 712A.2(b)(1) applied to respondent-father, and she explained that respondent-father did not place TS in the fictive-kin placement. Further, respondent-father had not taken any steps to rectify the barriers to reunification in the three years that TS had been in care and had not supported the child. TS was receiving everything he needed in his placement. The referee observed that respondent-father had tested positive for cocaine; missed parenting times; was unemployed; lived in a one-bedroom apartment with another person; and was noncompliant with the sex-offender registry, which subjected him to arrest.

The referee then referred to *Strickland-Miller I*, in which this Court explained, as part of its holding, that there was no allegation that the home in which TS lived was unfit, and the trial court had erred by finding jurisdiction under MCL 712A.2(b)(1). Accordingly, the referee found "that prong of the statute" had not been satisfied in the second, amended petition. The referee did find, however, that there was probable cause to authorize the amended petition under MCL 712A.2(b)(2).

Respondent-father sought reconsideration of the referee's findings, and the trial court affirmed. Respondent-father now appeals the trial court's finding of probable cause related to both petitions.

## II. ANALYSIS

We review for an abuse of discretion a trial court's decision to dismiss or authorize a petition following a preliminary hearing. See *In re Nikooyi*, 341 Mich App 490, 494; 991 NW2d 619 (2022). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or when it makes an error of law. *Id*. We review for clear

error a trial court's findings of fact. *In re McCarrick/Lamoreaux*, 307 Mich App 436, 463; 861 NW2d 303 (2014). A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id.*

"Child protective proceedings consist of two distinct phases: the trial, also known as the adjudicative phase, and the dispositional phase." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). During the adjudicative phase, the "trial court determines whether it may exercise jurisdiction over the minor child pursuant to MCL 712A.2(b)." *Id.* at 15-16. MCL 712A.2(b) authorizes jurisdiction, in relevant part, over a minor:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

A petition begins the formal part of the adjudication phase. A petition must contain factual allegations that, if proven, would allow a trial court to assume jurisdiction over a child. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). After a petition is filed, the trial court must hold a preliminary hearing, and it may authorize the petition if it finds probable cause that one or more of the allegations are true and could support the trial court assuming jurisdiction under MCL 712A.2(b). *Id.* See also MCR 3.965(B). "If the court authorizes the petition, the adjudication phase follows." *In re Ferranti*, 504 Mich at 15.

In the first petition relevant to this appeal, the DHHS sought jurisdiction in June 2024 under MCL 712A.2(b)(1) and (2). As to MCL 712A.2(b)(1), there is new evidence in the record to support a finding that TS was subject to a substantial risk of harm to his mental well-being were he to enter respondent-father's care. Significantly, there is evidence now that respondent-father was recorded stating that he would put TS in the care of his biological mother, whose parental rights had been terminated. This is a distinctly new allegation compared to the petitions challenged in the prior appeals. Further, respondent-father was noncompliant with his sex-offender registry requirements, exposing himself to the risk of arrest. Although respondent-father also had an active warrant at the time of the petition in *Strickland II*, which addressed jurisdiction under a preponderance of the evidence, this is just one of the factors supporting probable cause in this petition.

Respondent-father argues that this Court held in his two prior appeals that jurisdiction was not proper under (b)(1) and, for similar reasons, the trial court erred again. This argument misses the mark in two critical ways: First, unlike the prior appeals, there is new evidence, included with the first petition on appeal here, that respondent-father has engaged in an additional assaultive

crime; is noncompliant with the sex-offender registry; and made statements that he would allow TS's mother to care for the child. Moreover, at the time of the first petition, respondent-father's housing was unknown, and he had not seen TS for over one year. The factual allegations differ materially here from the prior two appeals.

Second, the prior two appeals involved appellate review of an adjudication finding jurisdiction, where this appeal involves review of a decision authorizing a petition. The standards differ between finding jurisdiction (preponderance of the evidence) and authorizing a petition (probable cause), with the latter being the laxer one. See *In re Ferranti*, 504 Mich at 15. To be more precise, "[a] probable cause determination does not involve the comparing and weighing of facts as required by the preponderance of evidence standard." *Blue Cross and Blue Shield of Mich v Milliken*, 422 Mich 1, 89; 367 NW2d 1 (1985). Here, based on the newly updated record, there was probable cause to conclude that TS would be subject to a substantial risk of harm to his mental well-being were he to enter respondent-father's care. Accordingly, the trial court did not abuse its discretion in authorizing the petition under MCL 712A.2(b)(1).

As respondent-father correctly points out, however, the trial court did abuse its discretion by also authorizing the first petition under MCL 712A.2(b)(2). As was true at the time of respondent-father's prior appeals, TS currently lives in an appropriate fictive-kin placement, and there are no allegations in the first petition that the fictive-kin home is unfit. Accordingly, MCL 712A.2(b)(2) was not a proper basis under which to seek jurisdiction in the first petition. See *In re Long*, 326 Mich App 455, 462; 927 NW2d 724 (2018). For the same reason, the trial court abused its discretion by authorizing the second, amended petition under MCL 712A.2(b)(2). While there is considerable confusion about the referee's justification for finding probable cause in the second, amended petition under (b)(2), what is clear is that there are no new allegations calling into question the fitness of TS's fictive-kin placement.

With that said, we reiterate that the trial court did not abuse its discretion by authorizing the first petition under (b)(1), and it would have been proper to authorize the second, amended petition on the same ground. In fact, the second, amended petition added allegations about respondent-father's cocaine use, which differs from the concern in *Strickland-Miller II* regarding cannabis and alcohol, further establishing probable cause under (b)(1).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray